RANNELS v. ROWE et al.

(Circuit Court of Appeals, Eighth Circuit. March 29, 1906.)

No. 2,163.

1. EXECUTORS—CONVEYANCE OF LANDS WITH WARRANTY IN EXCESS OF POWERS —PASSING OF INDIVIDUAL INTEREST AS DEVISEES.

A warranty deed to lands belonging to the estate of a decedent, made by his executors without authority, is ineffectual as against devisees, but where such executors were also devisees of an interest in the land, the deed, being in excess of their powers as executors, passes title to their individual interests by estoppel.

[Ed. Note.—For cases in point, see vol. 22, Cent. Dig. Executors and Administrators, § 587.]

2. DEEDS—CONSTRUCTION—CONDITIONS.

Whether a condition in a deed is precedent or subsequent is always a question of the intention of the parties, which is to be gathered from the context of the instrument read in those lights which are properly employed in the construction of writings.

[Ed. Note.—For cases in point, see vol. 16, Cent. Dig. Deeds, § 469.]

**3. SAME.**

A deed of lands to a railroad company recited the consideration as being a sum of money and a certain amount of the bonds and stock of the company, the receipt of which was acknowledged, and "in consideration of the building and completion of said railroad in three years from date hereof." At the end of the habendum clause were the words, "provided that said railroad shall be built and completed within the three years after date hereof," and the warranty concluded with the words, subject only to the conditions that if said railroad be not built and completed within three years from date hereof said lands shall revert * * * and this deed to be void. *Held*, that such condition was a condition subsequent, and the title passed and vested in the grantee subject to a right of forfeiture which might be asserted in case of a breach of the condition.

[Ed. Note.—For cases in point, see vol. 16, Cent. Dig. Deeds, § 495.]

**4. SAME—BREACH OF CONDITION SUBSEQUENT.**

A breach of a condition subsequent in a deed does not per se produce a reversion of the title, but the estate continues in the grantee until the proper step has been taken to consummate a forfeiture, and this requires a re-entry or some act that may be considered a lawful substitute therefor.

[Ed. Note.—For cases in point, see vol. 16, Cent Dig. Deeds, § 521.]

**5. SAME—WAIVER OF RIGHT OF FORFEITURE.**

The mere execution and recording of another deed to a third person, by the grantors in a prior deed. after the original deed has been recorded and without notice to the grantee therein, is not sufficient to effect a forfeiture of the first grant for breach of a condition subsequent, where no possession is taken, and the original grantee subsequently performs the condition, although after the time limited therefor in the deed has expired.

**6. SAME—ARKANSAS STATUTE.**

Sand. & H. Dig. Ark. § 701, authorizing the owner of an interest in lands in the adverse possession of another to sell and convey the same, was not intended to change the rule requiring re-entry or an equivalent act to forfeit an estate on breach of a condition subsequent.

[Ed. Note.—For cases in point, see vol. 16, Cent. Dig. Deeds, §§ 526, 529.]

**7. CORPORATIONS—CONTRACTS—ATTACKING REGULARITY OF ORGANIZATION.**

One who contracts with a corporation as such, or those in privity with him cannot avoid the effect of such contract on the ground of a defect in the organization of the corporation.

[Ed. Note.—For cases in point, see vol. 12, Cent. Dig. Corporations, § 84.]

**8. EQUITY—LACHES—SUIT BY GRANTEE OF LANDS AGAINST SECOND GRANTEE.**

A grantee of lands is not required to take any action to assert his title, as against a subsequent grantee from the same grantor, so long as the land remains wild and unoccupied, and is not chargeable with laches for failure to do so.

Appeal from the Circuit Court of the United States for the Eastern District of Arkansas.

This was a suit brought by Rannels to quiet his title to several thousand acres of wild and unoccupied lands in the state of Arkansas. All of the parties interested in the controversy claim title through Edmund McGehee. Part of the property in controversy was patented directly to him as swamp lands in 1858 by the state of Arkansas. The remainder was patented by the state to the heirs and legal representatives of McGehee in 1883, 18 years after his death, but this difference is immaterial since, if for no other reason, it appears that the conveyances to his heirs and legal representatives were by way of confirmation of an equitable title previously existing in him.

McGehee died in Mississippi in 1865 and under his will one-half of his estate went to his wife and the remainder to three children subject to the adjustment between the latter of an advancement made to James G. McGehee, a son. It does not appear that the half of the estate devised and bequeathed to the children was sufficient in value to leave a surplus for division among all three after the two of them were put upon equal terms with their brother James. Consequently the case should be considered as though James took nothing under the will.

In 1869 the Legislature of Arkansas passed an act which recited that large quantities of lands had been sold to the state for unpaid taxes and remained unredeemed, thereby preventing the improvement of the same and affecting the revenues of the state, and provided that whenever the owner of any lands sold or forfeited to the state for nonpayment of taxes should donate or subscribe the same in aid of the construction of any railroad, and such fact was reported to the auditor of public accounts, a certificate as in case of redemption should be granted, and thereupon the tax claims of the state on the lands so subscribed or donated should be remitted and discharged, subject, however, to a condition allowing the state to reassert its claim in case the railroad should not be constructed within a time specified.

In 1873 three executors of the will of McGehee, among them the widow and the son James, conveyed the lands in controversy by two executors' deeds to the St. Louis & Memphis Railroad Company, a corporation organized under the laws of Arkansas. These deeds contained covenants of warranty by the grantors as executors and also conditions that the grantee should build and complete its railroad within three years thereafter. It is conceded that these deeds were invalid as against the devisees of McGehee who did not join in the execution thereof, for the reason that no authority to make them had been obtained from any court of competent jurisdiction. All of the debts of the testator were paid and his estate was afterwards settled up leaving the lands to pass according to the terms of the will. The complainant acquired title mediately from the railroad company. The defendants, Adela V. Boice and Alberta J. Sharpe, claim under purchases made from the devisees, including the widow, in the years 1881–1883. The other defendants are not interested.

The railroad company made various ineffectual efforts between 1873 and 1880 to build and complete its road and after having expended about $280,000 upon the roadbed did nothing further by reason of financial embarrassment until 1889 when it made a contract with another railroad company which resulted in the building of the road substantially upon the line of the original survey. This contract was authorized by an Arkansas statute (Mansf. Dig. §§ 5526, 5530). Notwithstanding the railroad company failed to construct its road within the three years contemplated by the conditions of the executors' deeds nothing was done in the way of re-entry or declaration of forfeiture for condition broken, by the McGehee devisees or their subsequent grantees, including the defendants, prior to the completion of the railroad, unless the execution by the devisees of the deeds of 1881–1883 to the defendants' ancestors in title would have that effect.

The Circuit Court entered a decree dismissing complainant's bill.

Julian Laughlin (M. L. Stephenson and E. C. Hornor, on the brief), for appellant.

Augustin Boice (John B. Jones, on the brief), for appellees.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

HOOK, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The deeds to the railroad company, under which complainant claims, were executed by three executors and they contained covenants of warranty by them in their representative capacities. One of the ex-

ecutors was the widow of the deceased owner of the lands and under the will she took a half interest therein. The deeds were void as executors' conveyances because no authority to make them had been procured from the court having jurisdiction; but they nevertheless operated as conveyances of the widow's individual interest. This results from the doctrine of estoppel. A trustee acting within his powers does not render himself liable on his contracts and conveyances; but whenever he exceeds his powers and undertakes to transfer and convey without authority he becomes personally answerable to the grantee on his covenants. Coe v. Talcott, 5 Day (Conn.) 88, 92; Morris v. Watson, 15 Minn. 212 (Gil. 165); Tarver v. Haines, 55 Ala. 503; Allen v. De Witt, 3 N. Y. 276, 280; Brown v. Edson, 23 Vt. 435; Poor v. Robinson, 10 Mass. 131; Heard v. Hall, 16 Pick. (Mass.) 457. Another executor who joined in executing the deeds was a son of the testator and also a devisee, but by reason of an advancement made to him which the will required to be adjusted it does not affirmatively appear that he took any interest in the lands upon the settlement of the estate. The other devisees not being parties to the deeds were not concluded by them, and their interests, aggregating one-half of the whole, afterwards became vested in the defendants Boice and Sharpe by sundry conveyances. The remaining part of the controversy is therefore confined to the half interest in the lands which formerly belonged to the widow.

A most important question in the case is that of the character of the executors' deeds—whether they were upon conditions precedent that were never performed or upon conditions subsequent that required affirmative action to create a forfeiture of the estate conveyed. In each deed the consideration is recited as being a specified sum of money, one-fourth in first mortgage bonds and three-fourths in the capital stock of the railroad company, paid by it, and "in consideration of the building and completion of said railroad in three years from date hereof." At the end of the habendum clause is this:

"Provided that said railroad shall be built and completed within the three years after date hereof."

The warranty clause concludes with these words:

"Subject only to the conditions that if said railroad be not built and completed within three years from date hereof said lands shall revert to Edmund McGehee's heirs and administrators and this deed to be void."

The defendants contend that the foregoing conditions are precedent, and that as the railroad was not built and completed within the time limited no estate ever passed from the widow to the railroad company. The complainant's claim is that the conditions are subsequent and that therefore the title passed and vested in the grantee when the deeds were delivered subject to a right of forfeiture which was not asserted in time. In a condition precedent no title passes or vests until it is performed, while a condition subsequent operates by way of defeasance of a title that has once vested. Davis v. Gray, 16 Wall. 229, 21 L. Ed. 447. Various technical rules have been suggested for determining whether a condition in a deed or devise is of the one kind

or the other, but the true test is that of intention which is to be gathered from the context of the instrument read in those lights which are properly employed in the construction of writings.

In Finlay v. King's Lessee, 3 Pet. 346, 7 L. Ed. 701, Chief Justice Marshall said:

"The same words have been determined differently and the question is always a question of intention. If the language of the particular clause or of the whole will shows that the act on which the estate depends must be performed before the estate can vest the condition is of course precedent; and unless it be performed the devisee can take nothing. If, on the contrary, the act does not necessarily precede the vesting of the estate but may accompany or follow it, if this is to be collected from the whole will, the condition is subsequent."

To the same effect 2 Washburn on Real Property, *446.

The following have been held as exhibiting instances of conditions subsequent: A conveyance to a railway company upon condition that it should construct a certain length of road within a given time and upon default that the granted estate should revert (Schlesinger v. Railway, 152 U. S. 444, 14 Sup. Ct. 647, 38 L. Ed. 507) ; a conveyance upon condition that a county should build a jail upon the property within two years and so occupy it forever (Skipwith v. Martin, 50 Ark. 141, 150, 6 S. W. 514) ; a grant to a railway company of a right of way upon the express condition that it should construct its road within a time limited (Nicoll v. Railroad, 12 N. Y. 121) ; a conveyance upon the express understanding and condition that an institution be permanently located on the land within a year · and in case of failure the title should revert to the grantors upon repayment of the purchase money. Mead v. Ballard, 7 Wall. 290, 19 L. Ed. 190. The lands in controversy were conveyed to the railroad company to aid it in constructing its railroad and part of the consideration was in the stock and bonds of the company which the deeds recited as having been paid. These securities must have been regarded as possessing value and in the very nature of such things it cannot be assumed that their value wholly depended upon the completion of the road within three years. It is reasonable to infer that the bonds of the company, part of which went to the grantors as consideration, were secured upon other property than the lands in question. That it afterwards turned out that the bonds were of little or no value is not important. The intention of the parties which controls is the intention existing when the deeds were executed, not that of a later period. The question is not affected by the disaster which finally overtook the grantee. The fact that other considerations than the conditions inserted in the deeds were given to and received by the grantors tends to show a purpose to pass the title subject to a right of subsequent defeasance upon the failure of the grantee to perform the conditions within the time limited.

Again, when the lands were conveyed they were subject to tax claims held by the state of Arkansas. In order to encourage the building of railroads and thereby promote the development of its resources the state, through an act of its Legislature, offered to remit and discharge its claims if the owners of the lands so incumbered

would donate or subscribe them in aid of such an enterprise. In this case the state officer designated by the statute was furnished with a list of the lands as having been so subscribed and there was at least a suspension for some years of the claims of the state. This was an additional consideration moving from a third party. Moreover, the language of the conditions at the end of the warranty clauses in the deeds is plainly inconsistent with the contention that such conditions are precedent. Express provision was made that the lands should revert if the road was not built or completed within three years. A title that has never passed cannot be said to revert. While the other recitals in the deeds are of more doubtful import they are not inconsistent with the conclusion which we have reached that all things considered the conditions were intended to operate if unfulfilled as a ground of subsequent forfeiture of an estate conveyed and that performance need not precede the vesting of the title.

It is also contended that assuming the conveyances to the railroad company to have been upon conditions subsequent, nevertheless the conditions were not complied with, the right of forfeiture was seasonably asserted and the estate of the company thereupon came to an end. It is true that the conditions were not performed within the stipulated period, but is it also true that the estate was terminated before the railroad was finally completed? A breach of condition subsequent does not per se produce a reversion of the title. The estate continues in the grantee until the proper step has been taken to consummate a forfeiture, and this requires a re-entry or some act that may be considered as a lawful substitute therefor. Ruch v. Rock Island, 97 U. S. 693, 696, 24 L. Ed. 1101; Schulenberg v. Harriman, 21 Wall. (U. S.) 44, 63, 22 L. Ed. 551. The grantor may waive a breach of the condition entirely or postpone compliance therewith and his consent to a continuance of the estate in the grantee is presumed from his silence and inactivity. To effect a forfeiture there must be some affirmative, positive act which manifests the intention of the grantor. It may be done by re-entry upon the lands conveyed, by the declaration of a forfeiture or by the commencement of a suit for that purpose. There was no re-entry in this case; the lands were wild and unoccupied and continued so. No suit was brought in court involving that question prior to the completion of the railroad. The only thing that challenges our attention in this connection is the execution by the devisees of McGehee of the deeds under which the defendants claim. But this alone is not sufficient. The company was not charged by the registry act with notice of the deeds recorded after it secured title and put its own deeds upon record. Birnie v. Main, 29 Ark. 591, 595. The deeds were not brought to the attention of the railroad company, no declaration of forfeiture in connection therewith was made, and the company was allowed to proceed until, by virtue of its contract, a railroad was finally constructed and completed as originally contemplated, though not within the time. An entry or an equivalent act designed to work a forfeiture is not a mere matter of form which may be dispensed with; it is regarded as being of substance because intended to destroy an estate (Tallman v. Snow, 35

Me. 342), and whenever acts or words are relied upon as a substitute for a re-entry upon the land they must be of such a character as to distinctly admonish the grantee that thenceforth there is no waiver of his breach of condition and that his title is at an end. Willard v. Henry, 2 N. H. 120, 122. An intention to forfeit formed in the mind but undeclared is ineffectual. And for the same reason is a forfeiture declared to a third person but not communicated to the grantee. These rules are especially applicable where the condition prescribed is the doing of something within a time limited and the grantee afterwards proceeds and does it or causes it to be done in ignorance of the grantor's purpose to assert a forfeiture. In such a case the grantor should be held upon plain principles of justice to have waived the temporary default, as was his privilege.

Three other matters require brief notice. The Arkansas statute authorizing an owner of an interest in lands in the adverse possession of another to sell and convey the same (Sand. & H. Dig. § 701) was not intended to change the rule requiring entry or an equivalent act to forfeit an estate upon condition subsequent. Such provisions are common in the legislation of the states and their purpose is to abrogate an ancient rule of the common law which has no relevancy to the subject under discussion. The contention that the railroad company was not a corporation, and therefore took no title because the laws of Arkansas were not in some respects complied with in its organization cannot be sustained. It is not for the defendants or those under whom they claim and who dealt with the corporation as such to make the objection. Town of Searcy v. Yarnell, 47 Ark. 269, 281, 1 S. W. 319. Equally untenable is the defense that the railroad company and its grantees were guilty of laches in failing to assert their claims for so many years. The lands were wild and unoccupied, and there was no occasion for any action on their part. Moreover, the delay in the adverse assertion of the conflicting claims was mutual. Penrose v. Doherty, 70 Ark. 256, 261, 67 S. W. 398.

It follows from the foregoing conclusions that the complainant is entitled to a decree quieting his title to an undivided half interest in the lands in controversy.

The decree of the Circuit Court is therefore reversed, with directions to enter one in accord with this opinion.