### DUNN v. WALLINGFORD, et al.

No. 2682. Decided February 3, 1916. (155 Pac. 347.)

1. SPECIFIC PERFORMANCE—CONVEYANCE BY HEIR—EQUITY. When a prospective heir conveys his interest before the death of the ancestor, an action for specific performance can only be brought in a court of equity, and probate courts have no jurisdiction of the matter. (Page 498)

2. COURTS—CONVEYANCE BY HEIR—ENFORCEMENT—EQUITY. Where an assignment of an interest in the estate or a compromise agreement is made by the heir while the estate is in administration, a court of equity has jurisdiction to determine the controversy, which, if determined, permits the probate court to apportion or distribute the estate to those entitled thereto; and the probate courts, if having concurrent jurisdiction under Comp. Laws 1907, sec. 3778, possess it only because they possess the power to adjudicate questions in equity. (Page 498.)

3. EXECUTORS AND ADMINISTRATORS—COMPROMISE BY HEIR—PUBLIC POLICY. A compromise agreement by a surviving husband sole heir, made on the day he was appointed administrator, whereby he agreed to pay a claimant $4,400 from the estate if the personal estate should amount to approximately $11,500, in consideration of the claimant's releasing the administrator as such, or otherwise, from any liability to the claimant, was not invalid as against public policy. (Page 500.)

4. EXECUTORS AND ADMINISTRATORS — SETTLEMENT — AGREEMENT BINDING THE ESTATE. Neither the surviving husband as sole heir nor the administrator, if any, could legally bind an estate by agreeing to settle a claim against the estate by paying a stipulated amount from the estate, on condition that the per-

sonal estate should be valued at a certain amount, as far as creditors were concerned. (Page 500.)

5. EXECUTORS AND ADMINISTRATORS—ADMINISTRATOR'S ACT WITH-OUT AUTHORITY—PERSONAL LIABILITY. An administrator acting without authority does not bind the estate, but is personally liable. (Page 500.)

6. EXECUTORS AND ADMINISTRATORS—AGREEMENT WITH ADMINIS-TRATOR AND HEIR—EFFECT. The sole heir and subsequent administrator of an estate may, in the absence of fraud and misrepresentations, by assignment or compromise, bind a part or the whole of his interest in the estate by payment of the agreed amount out of the assets of the estate, as in doing so he is merely exercising his right to preserve and advance his own interest. (Page 500.)

7. EXECUTORS AND ADMINISTRATORS—ADMINISTRATOR'S INTEREST—POWERS AND DUTIES. The only interest an administrator has is to see that the estate is preserved for the creditors, and that it is not wasted in case there may be heirs whose interest he is bound to protect; but he is not a guardian for the heirs, and cannot complain if an heir assigns or disposes of his interest in the estate. (Page 503.)

8. EXECUTORS AND ADMINISTRATORS—CLAIMS AGAINST ESTATE—FU-NERAL EXPENSES—PAYMENT BY THIRD PERSON. Funeral expenses, although not paid by the administrator, but by a third person, may become a legal charge against the estate, as, from the necessity of the case, the law implies a promise to reimburse. (Page 503.)

9. EXECUTORS AND ADMINISTRATORS—ASSIGNMENT BY HEIR—EFFECT. A surviving husband, the sole heir and the administrator of his wife's estate, might by agreement bind his interest in the estate to reimburse the funeral expenses incurred in his absence by the claimant, in consideration of the claimant's release of himself and of the estate; such an agreement amounting in equity to an assignment pro tanto of the heir's interest in the estate. (Page 503.)

10. DESCENT AND DISTRIBUTION—INTEREST OF HEIR—ASSIGNMENT—DEBTS AND EXPENSES. Under the statutes the heir takes subject only to the legal claims against the estate, so that, where an heir assigns either all or part of his interest in an estate, it is always implied that the assignment relates only to what the heir may have, after debts and legal expenses of administration are paid. (Page 503.)

11. APPEAL AND ERROR — DISPOSITION — DIRECTIONS. In an action against the surviving husband and sole heir of a decedent, and a trust company which had been substituted in his place as

administrator, to enforce a compromise agreement made with the heir, where the heir attempted to withdraw his contest, and where the court, without making any order permitting him to withdraw or denying his request, proceeded, and dismissed the action, the Supreme Court, on plaintiff's appeal, would reverse judgment and remand, with directions to permit the heir to withdraw his contest if he wished to do so, and, if so, to enter his withdrawal of record and enter judgment for plaintiff, and, if he wished to contest, to hear the evidence, make findings of fact and conclusions of law, and enter judgment accordingly. (Page 504.)

Appeal from District Court, Third District; *Hon. Geo. G. Armstrong,* Judge.

Action by Louis Dunn against Harry S. Wallingford and the Salt Lake Security & Trust Company, a corporation, administrator of the estate of Ethel Wallingford, deceased.

Judgment for defendants. Plaintiff appeals.

REVERSED and REMANDED, with directions.

*D. O. Willey* and *Dey, Hoppaugh & Fabian* for appellant.

*D. W. George* and *W. R. Hutchinson* for respondents.

## APPELLANT'S POINTS.

It is doubtful if the probate division of this court would have any authority to determine the rights of any persons save heirs, legatees or devisees. If this were true, a bill for specific performance joining the administrator would be the only remedy. (*Estate of Ryder,* 141 Cal. 366; *In re Boyce Estate,* 74 N. Y. S. 958; *In re Randall's Estate,* 46 N. E. 945.) But whether proceedings in the probate division were possible or not, the remedy in equity is clearly appropriate. (*Blount* v. *Dillaway,* 199 Mass. 330, 17 L. R. A. [N. S.] 1036; *Abbott* v. *Gaskins,* 63 N. E. 933; *Leach* v. *Fobes,* 11 Gray [Mass.] 506; *Williams* v. *Vreeland,* 32 N. J. Eq. 135.) The administrator is a proper party, and indeed under the circumstances it would

be almost his duty to refer to the court sitting in equity for proper instructions. (*Stevens* v. *Clough,* 47 Atl. 615.)

While the court finds that Dunn was not entitled to any portion of the estate, nevertheless by the findings it is distinctly and expressly adjudged and determined that the representations which Dunn made and which Wallingford says induced the agreement were neither false nor fraudulent. We have then two parties differing in good faith and an agreement reached. Such a compromise is based upon a valid consideration and is binding and not against public policy. (*Grochowski* v. *Grochowski,* [Nebr.] 13 L. R. A. [N. S.] 485.) We also refer to the elaborate annotations: *Blount* v. *Dillaway,* 17 L. R. A. (N. S.) 1036. Where one attempts to bind the estate and fails to do so for want of authority, he binds himself personally and may be sued on the contract individually. *McCalley* v. *Wilborn,* 77 Ala. 549; *Andrus* v. *Blazzard,* 23 Utah 233.) It would be a strange and unique doctrine if one could make a contract, receive and retain the fruits; and successfully repudiate all personal liability because he had no authority to make the contract for another.

## RESPONDENT'S POINTS.

The executor or administrator of decedent has no power to bind the latter's estate by any note or bill which he may make in his representative capacity. So also is it impossible for the executor or administrator to bind the estate by the acceptance of a bill drawn in settlement of a claim against the estate. (2 Woerner Adm., Sec. 356; *Sterrest* v. *Barker,* 51 Pac. 695; *Melone* v. *Davis,* 7 Pac. 703; *Austin* v. *Monroe,* 47 N. Y. 360; *Renwick* v. *Garland,* 82 Pac. 89; *First National Bank of White Sulphur Springs* v. *Collins,* 43 Pac. 499; *Miller & Lux* v. *Gray,* 68 Pac. 770.) It seems that, if an executor or administrator wishes to avoid personal liability, he must expressly stipulate that the creditor shall be paid out of the estate only. Numerous cases support this proposition. In *Studebaker* v. *Montgomery,* 74 Mo. 101, 103, the court says:

"An administrator who signs a note describing himself as administrator, does not limit his liability, *unless he expressly confines his stipulation to pay out of the estate.*"

And again in *East Tennessee Company* v. *Gaskell*, 2 Lea. 742-745:

"If an executor or administrator make a note or bill and sign it as executor or administrator, he is personally liable, unless he expressly limit his promise, 'out of the assets of my testator's estate,' or, 'if the assets be sufficient,' or in some equivalent way. 1 Parson on Contracts, page 128."

See also *Patterson* v. *Craig*, 1 Baxter 291, 293; *New* v. *Nicolls*, 73 N. Y. 127, 131; *Banking Company* v. *Moorehead*, 116 N. C. 413; 2 Parsons on Bills and Notes, page 6.

FRICK, J.

Plaintiff commenced this action in the district court of Salt Lake County against Harry S. Wallingford, who, it is admitted, is the surviving husband and only heir of Ethel Wallingford, deceased, late of Salt Lake County, and also against Salt Lake Security & Trust Company, a corporation, as administrator of the estate of said Ethel Wallingford, deceased, hereafter called administrator, to determine and establish his rights under a certain writing or agreement which was executed by the plaintiff and said Harry S. Wallingford after the death of his said wife. The agreement reads as follows:

"This agreement made and entered into this thirty-first day of January, A. D. 1913, by and between Harry S. Wallingford, of Salt Lake City, Utah, party of the first part, and Louis Dunn, of the same place, party of the second part, witnesseth:

"Whereas, the said first party is the heir at law of the estate of the late Ethel Wallingford, sometimes more commonly called Ethel Williams;

"And whereas, the said second party claims certain interests in the said estate;

"And whereas, the said second party is desirous of settling any claim against the said estate he may hold and allow the first party to be appointed administrator of the said estate;

"Now, therefore, in consideration of the covenants and agreements hereinafter set out it is agreed by the respective parties:

"The first party agrees as follows:

"To pay the said second party the sum of forty-four hundred dollars, from the said estate aforesaid, upon the condition that the said estate shall consist of personal property to the value and amount of approximately eleven thousand five hundred dollars.

"That upon the payment of the said sum aforesaid to release and forever discharge the said first party, as administrator or otherwise, from any and all liability or debt, owing to the said second party as any claim against the said estate that may be owing to the said second party."

It, among other things, was alleged in the complaint that said Wallingford was duly appointed administrator of said estate on the 31st day of January, 1913, and was thereafter removed and said company, in April, 1913, was appointed in his stead; that said Wallingford has repeatedly asserted that he intended to defraud the plaintiff, in that he did not intend to and would not comply with the terms of said agreement, but intended to and would receive and appropriate all the funds of said estate and leave the State of Utah. It was also alleged that said Ethel Wallingford died in Salt Lake County on the 10th day of December, 1912, and that the personal property of her estate exceeded in value the amount stated in the agreement. The consideration or grounds upon which the agreement was based and many other facts respecting the nonresidence and lack of means of said Harry S. Wallingford are set forth in detail. Said Wallingford and the administrator filed separate answers, in which the agreement is attempted to be voided upon the alleged grounds of misrepresentation and fraud.

When the case came on for trial, it appears from the bill of exceptions that the proceedings were almost entirely limited to colloquies between the respective counsel and the court. The agreement was admitted in evidence, and it was also made to appear that the personal property of the estate was of a value exceeding $11,500, that said Wallingford was entitled to the whole thereof, and that no claims had been allowed against the estate. While the case was being heard Mr. Wallingford was called as a witness in his own behalf, and, after

he was asked and had answered a few immaterial questions, he addressed the court thus:

"I would like to enter no contest in this case, if the court please. I would like—"

The court inquired of him:

"You want to withdraw?"

The witness replied:

"Yes; I want to withdraw."

Counsel then made some statement, and Mr. Wallingford continued:

"If the court please, I want to enter no contest in this case, because I am the one the complaint is drawn against; I guess I have that right, I think. I have no attorney to advise me."

Counsel who signed Mr. Wallingford's answer, and who had questioned him, then said:

"I am not going to offer any more testimony, if the court please. I will withdraw my question, the last question to the witness."

And further:

"Now, we withdraw the last question which was asked the witness (Wallingford) on Saturday, and rest."

Counsel, speaking for the administrator, then said:

"The two defendants here (Wallingford and the administrator) are different individuals. The estate is here independent of the other defendant, and I desire that the case rest as it stands."

At this point Mr. Wallingford made a statement to the court which is not in the record and we have no means of determining what it was. Counsel then further said:

"I know this, that I represent the administrator of this estate, and, no matter what Mr. Wallingford may do in this matter, it is the sworn duty of the executor of this estate to defend this cause, and no matter—

"The Court: He can only withdraw as to himself. He cannot withdraw as to the executor (administrator). That is another matter entirely."

Thus the proceedings ended, so far as any attempt to offer evidence was concerned. The court, however, made findings, none of which are material to this decision, except, perhaps,

that the plaintiff was not guilty of any misrepresentation or fraud in obtaining the agreement; and all other findings seem to have been based upon the failure of the .parties to produce any evidence in support of the issues. The court, for some reason, however, concluded that the plaintiff could not re-cover upon the agreement, and hence dismissed the action with costs. The appeal is from that judgment.

We shall first take up the objection interposed by counsel for the administrator, that the action in question is improper and cannot be maintained. Actions to settle disputes arising out of assignments made by heirs or legatees of their interests in unsettled estates, or respecting the enforcement of compromise agreements relating to such interests, or    1 respecting conveyances by devisees or heirs of their in- terests in the real property of unsettled estates, in some juris-dictions at least, are not rare. · When a conveyance is made before the death of the ancestor, it is well settled that an action for specific performance can only be brought in a court of equity, and that probate or surrogate courts have no jurisdic-tion of such matters. See *Estate of Ryder*, 141 Cal. 366, 74 Pac. 993, and cases there cited.

Where, however, the assignment or compromise agreement is made after the death of the ancestor, and especially after the estate is in process of administration, it is not so clear that probate courts do not have jurisdiction to    2 hear and determine disputes respecting the validity of such assignments or compromise agreements. Under our stat-ute (Comp. Laws 1907, Section 3778) it may well be that our probate courts have such power. In a number of jurisdictions it has been held, however, that such actions should be brought in courts of equity, and, when such a court has determined the controversy, then the judgment may be certified to the probate court, and distribution of the particular interest in-volved can then be made by the probate court to the person found entitled thereto by the court of equity; that is, a court of equity either establishes the assignment or compromise agreement as legal and enforceable, either in whole or in part, or determines that it is not enforceable, and the judgment, whatever it may be, is then binding upon the parties and upon

the probate court unless appealed from and reversed. See *In re Boyce's Estate*, 37 Misc. Rep. 151, 74 N. Y. Supp. 958; *In Matter of Randall*, 152 N. Y. 508, 46 N. E. 945; *Blount* v. *Wheeler*, 199 Mass. 330, 85 N. E. 477, 17 L. R. A. (N. S.) 1036. See, also, note in 13 L. R. A. (N. S.) 484-488. In *Blount* v. *Wheeler*, *supra*, the court, in stating the nature of the action, says it is one "to establish an agreement of compromise * * * and to have the executor directed to pay to her (the assignee) one-third of the residue when his (the executor's) accounts are settled in the probate court and the time for distribution shall have come." The action was in equity to settle a dispute respecting a compromise agreement whereby an heir had agreed to pay to the plaintiff a certain portion of the heir's interest in the estate. The heir afterwards disputed the validity of the agreement, and hence the action to settle the dispute. The court held that such an action should be brought in equity, as was done, and overruled defendant's objections to the effect that the action was brought in the wrong forum. In the case of *In re Boyce's Estate*, *supra*, it was held that the controversy should be settled in a court of equity. In that case the Surrogate Court withheld distribution of the interest in dispute until the parties could bring an action in equity and their rights could be determined in that court. If it should be assumed, however, that under our statute our probate courts have the power to hear and determine such disputes at the time application is made for final distribution, or at any other time, and can determine to which one of the claimants the particular share or interest should be distributed, yet we cannot see why a court of equity would not also have jurisdiction of the controversy. It is said in some of the cases referred to that an action in equity in no way interferes with the proceedings in the estate or with the probate court, but the whole purpose thereof is to settle a controversy which, if determined, permits the probate court to apportion or distribute the estate to those who may be entitled thereto. It in no sense could interfere with the probate court any more than could an action to determine any other claim which in some way affects the estate and of which a court of equity has jurisdiction. Without determining the question of jurisdic-

tion of our probate courts, however, to hear and determine such disputes, we hold that, if they do have such jurisdiction, it is concurrent with that of courts of equity. In other words, if our probate courts, under our statute, possess such jurisdiction, it is because they possess the power to adjudicate questions of equity.

Nor is there any merit to the contention that the compromise agreement in question is against public policy and therefore void. The courts ordinarily treat such compromise agreements the same as they do other compromise agreements, and they hold them either valid or invalid for the same reasons.               **3**

This brings us to the only serious question in the case. As appears from the agreement itself, the plaintiff claimed "certain interests" in the estate of Ethel Wallingford, and to settle or compromise his claim Mr. Wallingford promised to pay the amount stipulated in the agreement "from the said estate upon the condition that the said estate shall consist of personal property to the value and amount of approximately $11,500." Counsel for the administrator contend that the agreement is void because it purports to bind the estate. It may be conceded that, under the circumstances, neither Mr. Wallingford nor the administrator, if there had been one, could legally have bound the estate by entering into the agreement. This is elementary, and needs no citation of authorities. Where there is no authority to act there can be no binding result.               **4**

But is is equally true, that, where an heir or legatee is also executor or administrator, then, although he may not bind the estate, he may nevertheless bind any interest he may have in the estate, and, if he is the sole heir or legatee, there is, and can be, no good reason for holding that he may not bind his whole interest if he choses to do so. If the administrator is the sole heir, as in the case at bar, and he deems it proper and advantageous to do so, why may he not compromise a claim against the estate, and, although he may not bind the estate so as to affect creditors, yet why may he not bind himself or the interest he has in the estate? When the courts say that, when an administrator acts               **5, 6**

without authority, he does not bind the estate, but is personally liable, they do not mean that, when the administrator is the sole heir or legatee, he may not bind his own interest. Where an administrator who is the sole heir, but without authority, acts for what he may deem to be for his own benefit in compromising a claim, or in agreeing to pay one, although he may not bind the estate, yet the general trend of the authorities is to the effect that he binds his interest in the estate. See *Bell* v. *Welch, Adm'r.* 38 Ark. 139; *Lanyon Zinc Co.* v. *Freeman,* 68 Kan. 691, 75 Pac. 995, 1 Ann. Cas. 403; *Chicago Lumber Co.* v. *Tomlinson,* 54 Kan. 770, 39 Pac. 694; *Rannels* v. *Rowe,* 145 Fed. 296, 74 C. C. A. 376. While the evidence in this case is meager, yet the record, as supplemented by counsel's statements, in substance, discloses that the deceased and Mr. Wallingford did not live and cohabit together for at least six years prior to her death; that she provided for herself out of her own means; that Mr. Wallingford was a nonresident of the State of Utah, to wit, a resident of Canada, at the time of her death, and apparently did not know of her last sickness and death until advised thereof by some one; that plaintiff claimed that he had paid the funeral expenses of the deceased, and that he also had a direct interest to the extent of $6,000 in the money which was deposited in the banks in the name of the deceased. It further appears that the deceased had been buried when Mr. Wallingford arrived at Salt Lake, and that after he had made application to be appointed administrator of the estate the plaintiff opposed his appointment for some reason, and also made claim for the amount he had advanced as funeral expenses and the further claim of having an interest in the money deposited as aforesaid. Under these circumstances the agreement of compromise was entered into. The record also discloses that Mr. Wallingford, on the same day that the compromise agreement was executed, was appointed administrator of the estate as the surviving husband and sole heir of the deceased. It also appears that in less than three months thereafter he was removed as administrator upon the ground of unfitness, and the present administrator was appointed in his stead. Now, the question arises, if Mr. Wallingford deemed it wise or to his interest to

enter into the compromise agreement with the plaintiff and to allow him the amount agreed upon to be paid out of the assets of the estate, all of which belonged to Mr. Wallingford after payment of debts, if there were any, and it seems there were none, why could he not do this? Does the mere fact that he could not legally bind the estate in so far as creditors were concerned also prevent him from binding himself? Counsel for the administrator cite a number of cases in which the courts have held that, where an administrator acts without authority, he becomes personally liable. If, therefore, an administrator becomes personally liable, why is not his interest in the estate likewise liable? But it is said that Mr. Wallingford, at the time he entered into the agreement, was not yet appointed administrator. In view, however, that it is contended he could not have bound the estate, although he had been appointed. we can see no force to this contention. The reason that an administrator becomes personally liable is because he is without authority to act in a representative capacity, and can only act in a personal capacity. Now, we cannot see why the sole heir or legatee may not bind his interest in the estate at any time in order to avoid litigation and expenses. In doing so he is but doing what all sane men have the right to do, namely, to preserve and advance their own interests. The only questions, therefore, it seems to us, are: (1) Did the plaintiff have a *bona fide* claim against the estate of the deceased, and (2) was the compromise agreement free from actionable fraud and misrepresentation. As to the fraud and misrepresentation the court found in favor of the plaintiff. In addition, however, to having paid the funeral expenses, plaintiff also claimed that a portion of the money on deposit, although deposited in the name of the deceased, nevertheless belonged to him. Waiving the question respecting the interest in the money for the moment, yet we think the plaintiff had some claim for funeral expenses. Counsel for the administrator claim that those were paid voluntarily, and that the estate is therefore not liable. Let us here and now settle the extent of the administrator's interest in this controversy.

The only interest the administrator has is to see that the

estate is preserved for the creditors, and that it is not wasted in case there may be heirs whose interests it is bound to protect. The heirs, or if there be but one, may, however, act for himself so far as his interest is concerned. **7-10** The administrator is not a guardian for the heir, and the latter may assign or dispose of his interest in the estate at any time and to any person without the consent of the administrator, provided he does so for a good or legal consideration. Morevoer, funeral expenses, as a general rule, although paid by a person other than the administrator, may, nevertheless, be a legal charge against the estate. In 2 Woerner's American Law of Administration, Section 357, it is said:

"It is clear that, if the executor voluntarily pay them [funeral expenses], he must be allowed credit for the disbursement as expense incident to the administration, because the funeral is a work of necessity, as well as of charity and piety; * * * and, if this duty, in the absence or neglect of the executor, is performed by another, not officiously, but under the necessity of the case, the law implies a promise to reimburse him for the reasonable expenses incurred and paid."

To the same effect is 18 Cyc. 437, 438. In case a woman dies who lives apart from her husband who is a resident of a foreign country, is it not reasonable to bury the dead? It seems, therefore, that if Mr. Wallingford desired to bind his interest for the purpose of recompensing plaintiff for what he had paid for funeral expenses, the administrator, in this case at least, cannot complain. In the case of *In re Davis' Estate*, 27 Mont. 490, 71 Pac. 760, Mr. Chief Justice Brantly very clearly points out that, where an heir assigns or disposes of his interest in an estate, the administrator may not complain. In speaking of the rights of the assignee from an heir and the rights of the administrator, the Chief Justice says:

"He [the assignee] had therefore been, in effect, substituted in the stead of his assignors, and had all the rights which such substitution implied. It did not lie in the mouth of the administrator to question the substitution. There were no creditors whose interests he was bound to protect, and the order directing payment would be his warrant therefor. Nor could the administrator of John A. Davis question it. It was no concern of either of them so long as the assignors did not complain."

Precisely so here. Why should the administrator insist upon litigation and upon causing needless expenses if the only heir is willing to allow plaintiff's claim? If counsel's contention should prevail, then the administrator of an estate may litigate any question which does not affect the estate at all, but only affects the interest of the heir, who may be able to take care of his own interests, and may thus waste the estate in needless litigation, so that there will be nothing to distribute either to the assignee of the heir or to the heir himself. Such is not the law. If Mr. Wallingford desired to ented into a compromise agreement which would affect his interest in the estate, he, in our judgment, had a perfect right to do so. Of course, he could not prejudice any creditor by anything he did or attempted to do. If, however, there were no creditors, he could do with his own as to him seemed best. Moreover, under our statute, and under the law of succession generally, it is well understood that the heir takes subject only to the legal claims against the estate. Where an heir, therefore, assigns either all or part of his interest in an estate, it is always implied that the assignment relates to only what the heir may have after debts and legal expenses of administration are paid. We are clearly of the opinion, therefore, that if the compromise agreement is not assailable upon the ground of fraud and misrepresentation, in equity at least, it amounts to an assignment pro tanto of Mr. Wallingford's interest in the estate, and, further, in view that he disputed the validity of the agreement when the action was commenced, it was proper for the plaintiff to go into a court of equity to settle the dispute.

What troubles us at this time, however, is how to dispose of the case. As we have pointed out, the record shows that at the time of the hearing Mr. Wallingford attempted to withdraw his contest or opposition to plaintiff's claim. The court, however, made no order either permitting him to do so or denying his request. Indeed, for some reason undisclosed, Mr. Wallingford's statement was stricken from the record, and the whole matter ended there. From what the court indicated, however, it seems it was its view, as well as counsel's, that the administrator could carry on

the contest regardless of Mr. Wallingford's wishes. This, as we have seen, is not true, at least not to the extent assumed by both court and counsel. There being no creditors, the administrator is not concerned with what becomes of Mr. Wallingford's interest; nor is it concerned with what the latter does with it. The administrator cannot prolong the litigation in view that only Mr. Wallingford's interest is affected. The question therefore is: Did Mr. Wallingford withdraw his contest or opposition to the claim in question, and is he willing that the plaintiff shall have judgment establishing the claim for the amount stated in the compromise agreement? In view that we entertain a doubt upon that question, and in order to avoid entering a premature judgment in the case, we shall remand it with directions.

The judgment is therefore reversed, and the cause is remanded to the District Court of Salt Lake County, with directions to permit Mr. Wallingford to withdraw his contest or objections to plaintiff's claim if he still desires to do so. If he does, then to enter his withdrawal of record and enter judgment in favor of the plaintiff establishing the compromise agreement. If, upon the other hand, Mr. Wallingford desires to insist upon his answer and wants to be heard upon his alleged defense of fraud and misrepresentation, then the court is directed to hear the evidence upon that question and make findings of fact and conclusions of law, and enter judgment accordingly; costs upon this appeal to be paid out of the assets of the estate.

McCARTY, J., concurs.

STRAUP, C. J.

I concur in the conclusion reversing the judgment, but I think the order should be to grant a new trial.