2000 UT App 362

**STATE of Utah, in the interest of C.S.B., a person under eighteen years of age.**

**C.S.B., Appellant,**

v.

**State of Utah, Appellee.**

**No. 990842–CA.**

Court of Appeals of Utah.

Dec. 14, 2000.

Matthew Hilton, Springville, for Appellant.

Jan Graham, Atty. Gen., and Christopher Ballard, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before Judges BENCH, DAVIS, and THORNE.

1. Defendant also claims the State's evidence was insufficient to support a finding of delinquency. Because we conclude that the juvenile court erred in its written order, we do not address the merits of this claim.

2. Following C.S.B.'s initial guilty plea, which the juvenile court accepted, C.S.B. filed an Extraor-

## OPINION

THORNE, Judge:

¶ 1 C.S.B. appeals from the juvenile court's delinquency order, arguing that the juvenile court committed error in its determination that "the State has met its burden by clear and convincing evidence" in his delinquency proceeding.[1]

¶ 2 We reverse and remand.

## BACKGROUND [2]

¶ 3 On September 16, 1998, C.S.B., a ten year old male, C.S.B.'s three-year old brother, and two girls, approximately ages six and eight, entered an empty storage room in their apartment complex. After entering the room, C.S.B. closed and locked the door. Initially, the girls played together without any significant contact with either C.S.B. or his brother. As time wore on, the girls covered themselves with a blanket and began talking. C.S.B. slid under the blanket, spread the younger girl's legs and "licked her underwear." He then pulled down her underwear, touched her genitals, and attempted to insert his finger into her vagina. Finally, he pulled up her dress and licked her "boob."

¶ 4 Before leaving, C.S.B. told the girls that "he had some older girlfriends" and "[t]hat he used to do the same thing [with them]." Then, both C.S.B. and his younger brother pulled down their pants, exposed their genitals, and one of the boys said "look at my weenie." When the door was finally opened, the girls fled the room, later informing their parents of the incident.

¶ 5 On August 2, 1999, the juvenile court held a delinquency hearing to determine C.S.B.'s culpability on the following charges: (1) sodomy, (2) aggravated sexual assault on a child, and (3) lewdness (two counts). Following the presentation of evidence, the juve-

dinary Writ in the Third District court. Judge Thorne, assigned as the District Judge, denied the Writ. Subsequently, C.S.B. was permitted to withdraw his plea, and a trial was held. Both parties to this appeal have submitted waivers of objection to Judge Thorne sitting on this panel.

nile court determined that the State had presented insufficient evidence to support the sodomy charge. However, the court also found, without making specific reference to the applicable standard, that the evidence was sufficient to support the remaining charges. The court later issued written findings which stated that the State had met its burden by "clear and convincing evidence."

## ANALYSIS

■ ¶ 6 This court reviews a juvenile court's conclusions of law under a correction of error standard. *See In re. L.P.,* 1999 UT App 157, ¶ 4, 981 P.2d 848. In juvenile court, "criminal and delinquency cases must be proved beyond a reasonable doubt." Utah R. Juv. P. 24(b)(6); *see also* Utah R. Juv. P. 41(a). Ordinarily, the juvenile court's use of the clear and convincing standard in its written findings would leave us no choice but to reverse the juvenile court's determination and remand this case, especially in the absence of a statement on the record as to the actual standard used.

¶ 7 The State, however, argues "the juvenile court's use of that language in the delinquency order most likely reflected a clerical error in the form of an inadvertent substitution of terms." The State urges this court to remand, instructing the juvenile court to correct the error under either Utah Rule of Civil Procedure 60(a), or Utah Rule of Criminal Procedure 30(b).

■ ¶ 8 "[D]elinquency is considered civil rather than criminal in nature," *State v. McClendon,* 611 P.2d 728, 729 (Utah 1980); *see also* Utah Code Ann. § 78–3a–515(1) (1996). Thus, we examine the State's recommendation under Rule 60(a) of the Utah Rules of Civil Procedure, which states:

> clerical mistakes in judgments ... arising from oversight or omission may be corrected by the court at any time of its own initiative or on motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the appellate court, and thereafter while the appeal is

pending may be so corrected with leave of the appellate court.

Utah R. Civ. P. 60(a). If the State suspected a clerical error and desired a correction, the proper course would have been for the State to submit a motion to the juvenile court identifying the suspected error and requesting a correction. By rule, the State was permitted to make such a request even while this appeal was pending. The record, however, reflects no such motion, and that option is now foreclosed with this court's decision.

■ ¶ 9 Had the State timely moved to correct the alleged error, Rule 60(a) "is limited to curing errors [that occur] in accurately *memorializing* a judgment." *State v. Moya,* 815 P.2d 1312, 1317 (Utah Ct.App.1991) (emphasis added). We have held " '[w]here the language of a judgment is clear and unambiguous, it must be given effect as it is written.' " *State v. Denney,* 776 P.2d 91, 93 n. 2 (Utah Ct.App.1989) (quoting *State v. Garcia,* 99 N.M. 466, 659 P.2d 918, 923 (Ct. App.1983)). A review of the current trial record discloses neither a clear indication that the trial court in fact utilized the proper standard, nor that an error occurred in "accurately memorializing" the judgment. While it is likely the error is the result of clerical inadvertence, the juvenile court's use of the "clear and convincing" standard in its written order leaves us no choice but to reverse.

¶ 10 In response to the possibility of retrial, C.S.B. argues that we must remand this case directing dismissal of the charges. C.S.B. argues that any other action would violate due process because jeopardy has already attached. In making this argument, C.S.B. would limit this court's authority to remand cases for retrial or other proceedings.

### I. Scope of Our Authority to Remand

¶ 11 Utah's appellate courts have possessed remand authority in some form since their creation. *See* Compiled Laws of Utah § 2360 (1876). In 1888, the territorial laws codified appellate authority to remand and authorized "the court [to] reverse, affirm or modify the judgment or order appealed from ... [and] if proper, order a new trial or

further proceedings to be had." *Id.* at § 3006.s22 (1888).[3] This authority remained substantially unchanged through 1943,[4] when the Utah Legislature merged remand authority into the newly adopted Code of Civil Procedure, which stated

> in case the findings are incomplete in any respect, [the supreme court may] order the court from which the appeal is taken to modify or complete the findings so as to make the same conform to the issues presented and the facts as the same may be found to be by the trial court from the evidence, and may direct the trial court to enter judgment in accordance with the findings when corrected as aforesaid, or may direct a new trial in any case, or further proceedings to be had.

Compiled Laws of Utah § 104–41–23 (1943); *see also id.* at § 105–43–3 (1943).

¶ 12 Remand authority remained incorporated within Utah's Rules of Civil Procedure until 1984, when Utah adopted the Rules of Appellate Procedure. *See* Utah R. Civ. P. 76(a) (1953 and 1977); *see also* Utah Code Ann. § 77–42–3 (1976). This court's authority to remand continues within the Rules of Appellate Procedure and is substantively similar to the remand authority possessed over 100 years ago. *See* Utah R.App. P. 30(a). Presently "[i]f a judgment of conviction is reversed, a new trial shall be held unless otherwise specified by the court." *Id.* at 30(b).

¶ 13 The Utah Supreme Court first exercised its remand authority in *Murphy v. Carter,* 1 Utah 17 (1876), where the court reversed and remanded based upon the trial court's improper and prejudicial interpretation of then existing libel laws. *See id.* at 23. In *People v. Heller,* 2 Utah 133 (1877), the court reversed and remanded the defendant's criminal conviction for a new trial, because the trial court failed to either arraign or accept a plea from the defendant. *See id.* at 134–35.

¶ 14 The supreme court addressed the scope of its remand authority in 1913, holding that " '[w]here the appellate court reverses a judgment and remands the cause generally without specific directions, amendments to the pleadings may be allowed upon the reinstatement of the case in the court below as if it had never been tried....' " *Larsen v. Gasberg,* 43 Utah 203, 210, 134 P. 885, 887 (1913) (citation omitted). In 1916, the court determined that it could direct a trial court "to hear [additional] evidence upon [an] issue and make findings of fact and conclusions of law, and enter judgment accordingly." *Dunn v. Wallingford,* 47 Utah 491, 505, 155 P. 347, 352 (1916).

¶ 15 Finally, in a case with issues similar to those presented here, the supreme court remanded to the trial court, with instructions to reconsider its decision utilizing the proper standard. *See Hoffman v. Life Ins. Co. of N. Am.,* 669 P.2d 410, 420–21 (Utah 1983). More recently, our supreme court held that a trial court is not restricted in terms of evidence or theories presented on remand unless expressly limited by the appellate court. *See Braithwaite v. West Valley City Corp.,* 921 P.2d 997, 1002 (Utah 1996). Therefore, contrary to defendant's arguments, this court clearly has the authority to remand this case to the trial court for further proceedings.

## II. Double Jeopardy

¶ 16 Defendant also argues that a retrial would violate due process. "The Fifth Amendment provides that no 'person [shall] be subject for the same offense to be twice put in jeopardy of life or limb * * *.' " *United States v. Tateo,* 377 U.S. 463, 465, 84 S.Ct. 1587, 1589, 12 L.Ed.2d 448 (1964) (alteration in original) (citation omitted). However, " '[the Double Jeopardy Clause] does not preclude the Government's retrying a defendant whose conviction is set aside because of an error in the proceedings leading to conviction....' " *Burks v. United States,* 437 U.S. 1, 13, 98 S.Ct. 2141, 2149, 57 L.Ed.2d 1 (1978) (alteration in original) (quoting *Tateo,* 377 U.S. at 465, 84 S.Ct.

---

3. *See also* Compiled Laws of Utah § 5154.s378 (1888).

4. *See* Utah Rev. Stat. § 4977 (1898); Compiled Laws of Utah §§ 3304x, 4977 (1907); Compiled Laws of Utah § 9233 (1917).

1587). Moreover, "it is quite clear that a defendant who procures a judgment against him upon an indictment to be set aside may be tried anew upon the same indictment, or upon another indictment, for the same offense of which he had been convicted." *Ball v. United States,* 163 U.S. 662, 665, 16 S.Ct. 1192, 1195, 41 L.Ed. 300 (1896).

¶ 17 The rationale underlying this policy is clear; " '[i]t would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction.' " *Burks,* 437 U.S. at 15, 98 S.Ct. 2141 (quoting *Tateo,* 377 U.S. at 466, 84 S.Ct. 1587). Further, "reversal for trial error, as distinguished from evidentiary insufficiency ... is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental aspect, e.g., ... incorrect instructions." *Id.* "When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished." *Id.* Because we conclude that the juvenile court committed a procedural error in utilizing the clear and convincing standard in C.S.B.'s delinquency proceeding, we reverse and remand, noting that such a remand does not violate the Due Process Clause of the United States Constitution.

## CONCLUSION

¶ 18 The juvenile court erred when it used the clear and convincing standard in its written findings for C.S.B.'s delinquency hearing. Therefore, we reverse. Additionally, we conclude that our authority to remand is clear, and, in this instance, that remand does not violate C.S.B.'s Fifth Amendment double jeopardy protections.

¶ 19 We remand this case to the juvenile court for further appropriate written findings, wherein the court is instructed to apply the appropriate standard of beyond a reasonable doubt. The juvenile court may accomplish this in its discretion through reevaluating the evidence, conducting a new trial, or other means deemed appropriate. We further direct the juvenile court to explain on the record its reasons for choosing the direction it takes.

¶ 20 WE CONCUR: RUSSELL W. BENCH, Judge, and JAMES Z. DAVIS, Judge.