# Kater *versus* Steinruck's Administrator.

*Chattel Mortgage.—Rights of Mortgagee after Death of Mortgagor.— Set-off, when not admissible in Trover.—Executors and Administrators, Agents of the Law rather than Successors of Decedent.*

1. Where, under a mortgage of chattels, the mortgagee having the right to take possession and sell on default in payment, did, upon such default, after death of mortgagor, take possession of and sell the chattels mortgaged, it was *Held*, That an action of trover would lie against him, by the administrator of the decedent, to recover the value of the goods sold.

2. On the death of a mortgagor, his personal estate in possession passes into the custody of the law, to be administered for the benefit of all parties, and the mortgagee has no right to take it in satisfaction of his own debt, whether sufficient property has been left by the decedent to pay the debts, or not.

3. The mortgagee in such case can not, in the action of trover, set off the debt due him by the mortgagor against the value of the property converted; because, to allow the set-off, would be to sanction the seizure of the property, and would mix the remedies of tort and debt in the same action.

ERROR to the District Court of *Allegheny county*.

This was an action on the case, in trover and conversion, brought to November Term 1858, in the court below, by J. Ludwig Koethen, administrator of Samuel Steinruck, deceased, against John Kater.

The case was this:—Steinruck was indebted to Kater, on the 29th of April 1858, in the sum of $1850, but was at the time unable to pay. For the purpose of enabling Steinruck to pay this claim without inconvenience, Kater took from him sixteen or eighteen promissory notes of about $100 each; the first pay-

[Kater *v.* Steinruck's Administrator.]

able two months from date, the second at three months, and so on, from month to month.

On the next day Steinruck executed and delivered to Kater a judgment-bond, conditioned for the payment of the sum of $1850, in one year from date, as also the following agreement:—

"Whereas, Samuel Steinruck, of the city of Pittsburgh, is indebted to John Kater, of the city of Philadelphia, in the sum of $1850, and, to secure the payment of the same, has this day executed and delivered to said John Kater a judgment-bond; now for the better securing of the payment of said indebtedness,

"*Know all men by these presents*, That I, Samuel Steinruck, for and in consideration of the payment to me of the sum of $1, the receipt whereof is hereby acknowledged, as well as for the security of the payment aforesaid, have bargained, sold, assigned, and set over to the said John Kater, as collateral security for the payment of said sum of $1850, all my right, title, and interest of, in, and to the lease I now have and hold for my business-house on Wood street, in the city of Pittsburgh; all the counters, gas fixtures, furniture; all the implements and articles of every nature and kind, used or to be used in and about the carrying on the business of an eating-house; with the full and free right, upon the default hereinafter named, to have, take, and possess all the produce and provisions of every kind and nature then on hand. And in the event of the failure of said Steinruck to pay said debt upon the days and times fixed, or that may hereafter be fixed in certain promissory notes to be given by said Steinruck to said Kater, on account of said debt, then said Kater shall immediately, upon such default, have the right to take possession of the said lease, and the property hereinbefore mentioned, and sell the same to any person or persons, at public or private sale, as he may see fit, without further notice; and after paying and fully discharging all of said debt, and charges attending the collection of the same, to pay back to said Steinruck the balance remaining.

"In witness whereof I have hereunto set my hand and seal, this day of April, A. D. 1858.

S. STEINRUCK, [L. S.]

"Signed, sealed, and delivered in presence of
A. G. STEINRUCK.

"It is also understood and agreed by the above-named Samuel Steinruck and John Kater, that neither the foregoing instrument, nor the notes given for the said debt above mentioned, shall in anywise prevent the said Kater, at any time, issuing executions upon the judgment entered, or which may be entered on said judgment-bond, for so much of said debt as may at such time

remain unpaid, if said Kater should deem the same necessary and proper.

" Witness my hand and seal, this day and year above written.

S. Steinruck, [L. s.]

" Attest :

A. G. Steinruck."

Under this arrangement matters remained until one or two of the notes matured.

On the 21st of August 1858, Steinruck died. One of the notes which was drawn at four months, fell due August 22d 1858. On receiving notice of its non-payment, Kater took possession of the property, and sold it for about $1600. After this the plaintiff took out letters of administration on the estate of Steinruck, and brought this action against Kater as above stated.

Steinruck had no other property, and was largely indebted to other persons at the time of his death.

On the trial the court below (Hampton, J.) instructed the jury, pro forma, that the papers given in evidence (to wit, the deposition of Aaron Steinruck, explaining the transaction, the bond, the notes, and the agreement above mentioned), did not constitute a valid defence to the action ; that the plaintiff was entitled to receive the actual cash value of all the movable property belonging to his intestate at the time of his death, and which was taken possession of by the defendant after the death of Steinruck, with interest ; and that if they believed the testimony of the witnesses they should so find, subject to the opinion of the court on the following questions, to wit :

1. Whether the agreement and notes and judgment-bond, given in evidence by the defendant, with the fact that he took possession of the property, under these papers, after the death of Steinruck, and before letters of administration were taken out, the validity of his claim not being controverted, constituted a good and valid defence or not ?

2. Whether the defendant, if he was not entitled to take and retain the property in dispute, under his agreement with Steinruck, would not be entitled to set off his claim in this action to the amount of the value of the property in dispute ?

And if the court should be of opinion with the defendant on either of these questions, then judgment to be entered for the defendant non obstante veredicto, otherwise judgment to be entered on the verdict in favour of the plaintiff. There was verdict accordingly.

On June 6th 1860, the prothonotary was directed to enter judgment for the plaintiff on the questions of law reserved, on payment of usual fee.

The defendant thereupon sued out this writ, and assigned as

cause for reversing the judgment, 1. That the court erred in entering judgment for plaintiff upon the points reserved. 2. That the court erred in not allowing defendant a set-off to the amount of his claim on the judgment entered.

*E. H. Stowe* and *R. Biddle Roberts*, for the plaintiff in error, argued that, even if the transaction was a legal fraud as between Steinruck and Kater, the plaintiff could not take advantage of it after his death, so as to recover of Kater, without first showing intestate's estate to be insolvent, which had not been done: Buehler *v.* Glenninger, 2 Watts 226; Asborn *v.* Moss, 7 Johns. 161; Stewart *v.* Kearny, 6 Watts 455. The agreement was, that on failure to pay the notes at the time fixed, Kater was to take the property and dispose of it. Excluding the days of grace, Kater's right to do so was perfect before Steinruck died. Can the fact that the day of grace extending the time of payment one day after his death, reduce Kater's right to a level with those of the other creditors? Is not the agreement a power of attorney coupled with an interest which death cannot revoke? In the case of a pledge, or pawn, the death of the debtor or pawnee would not have this effect. The transaction was not fraudulent in law: See Edwards *v.* Harben, 2 T. R. 587; 1 Sm. Lead. Cases, vol. 1, p. 40.

2. If the suit was rightfully brought, the defendant was entitled to set off his claim: Saam *v.* Saam, 4 Watts 432; Stockton *v.* Wilson, 3 P. R. 130; for he was an executor *de son tort*, if not the rightful possessor of the goods.

*Thomas B. Hamilton*, for defendant in error.—The estate was insolvent, as the testimony in the case showed, though not returned with the record.

As to the fraudulent character of a sale without a surrender to the vendee, no authority need be cited. The agreement gave Kater no right to the property in dispute, until the note had matured, which was on the day after Steinruck died. Up to that it was a chattel mortgage, and worthless: 2 Kent's Com. 516; Stewart *v.* Kearney, 6 Watts 455; Martin *v.* Mathiot, 14 S. & R. 215, 216; Collins *et al. v.* Myers, 16 Ohio 547. See also 8 S. & R. 275, and 7 W. & S. 219.

The moment Steinruck died in possession of the property, its *status* was fixed by the intestate laws for the benefit of all his creditors: McClintock's Appeal, 5 Casey 368; 2 Kent's Com. 516; Ryall *v.* Rowles, 1 Vesey 349.

2. As to Kater's right of set-off, it is not sustained by Saam *v.* Saam, 4 Watts 433. He never paid any of decedent's debts, nor did he consider himself an executor *de son tort*, but as one entitled to the ownership of the goods.

[Kater *v.* Steinruck's Administrator.]

The opinion of the court was delivered, November 29th 1861, by

Lowrie, C. J.—The Roman law, and from it the English law, especially in early times, regarded executors and administrators as the successors to the personal estate of their decedent, and charged as such with the payment of his debts. Our legislation has tended more and more to treat them as the mere agents of the law for settling up his estate, often his real as well as his personal estate, and distributing it among his creditors and legatees, or next of kin. Now, this is entirely the nature of their office, as our legislation is summed up in the Act of 1834; and for all their acts, as such agents of the law, they are to account in the Orphans' Court. Even such suits as may be brought against them in other courts are subject to be stayed when they seem likely to interfere with the control of the administration which is given the Orphans' Court. Even a mortgagee of the land of the decedent may be stopped in his process on the mortgage, that the administrator or executor may apply to have the sale made under the direction of the Orphans' Court.

Here we have a mortgage of chattels to secure a debt which gives the mortgagee a right to take possession and sell, if there should be any default in payment. There was no default in the mortgagor's lifetime, but one occurred immediately after his death, and thereupon the mortgagee took possession of the property, and hence this suit in trover by the administrators. The court below was right in sustaining the action, and in denying to the mortgagee his claim to set up his debt in bar to the claim for the value of the goods.

By the death of the mortgagor his personal estate in possession passed into the custody of the law for administration, and the mortgagor had no right to undertake to administer any part of it for the satisfaction of his own debt. Even if there is enough to satisfy all the creditors, he cannot decide that question, but must leave it to the decision of the Orphans' Court. If there is not enough, his mortgage without possession became void as to creditors by the death of his debtor, for then the law took hold of the estate for the benefit of all. If there is enough, he cannot suffer much by waiting the due course of administration. To allow him to set off his debt against this action, would be equivalent to a sanction of his seizure of the property, and would also be mixing up the remedies of tort and debt in the same action.

Judgment affirmed.