### Web Kinder, Administrator, Appellant, v. Perry King, Appellee.

1. ADMINISTRATION OF ESTATES—*debts of deceased.* The estate acquired by an administrator is chargeable with the burdens placed thereon by deceased.

2. ADMINISTRATION OF ESTATES—*rights of administrator.* An administrator acquires the exact interest in property owned by the deceased at the time of his death, subject to liens thereon, valid as between the parties.

3. MORTGAGES—*chattel mortgage, when void.* A chattel mortgage is void as to third persons if possession is not taken on maturity of the debt, but the widow, heir, or administrator, of a mortgagor is not such third person.

4. MORTGAGES—*recording.* As between the parties to a chattel mortgage, it is valid, though not recorded.

5. MORTGAGES—*chattel.* A chattel mortgage is valid, though the mortgagor was insolvent and in possession of the goods at the time of his death, and the instrument was not filed for record until two days afterward, and the administrator will not be allowed to assail or impeach the acts of his intestate in behalf of unsecured creditors.

Appeal from the Circuit Court of Lawrence county; the Hon. WILLIAM H. GREEN, Judge, presiding. Heard in this court at the October term, 1912. Affirmed. Opinion filed March 10, 1913.

S. J. GEE and JOHN E. McGAUGHEY, for appellant.

GEORGE W. LACKEY and JAMES GROFF, for appellee.

MR. PRESIDING JUSTICE McBRIDE delivered the opinion of the court.

This was a petition for citation by Web Kinder, administrator, etc., alleging that Perry King was possessed of $2,000 worth of drilling tools, etc., which the said administrator was entitled to have delivered to him. The case was tried in the County Court and from there appealed to the Circuit Court of Lawrence county. The Circuit Court denied the prayer of the petition, from which order this appeal is prosecuted.

The petition was presented by the administrator and alleges that Perry King has in his possession property belonging to the estate of George McAuliff consisting of boilers, engines, rigs, drills, tools, etc., of the value of about $2,000, and asking that he show cause why such property should not be delivered into the possession of the petitioner. To this petition Perry King filed his answer admitting the possession of the goods, averring that he held possession thereof by virtue of a chattel mortgage given by George McAuliff on the 16th day of June, 1911, to secure a note for $1,000 due six months from date, which mortgage was filed for record on December 9, 1911, and on December 16, Perry King took possession of such goods and chattels by virtue of such mortgage. To this answer Web Kinder, administrator, replied denying that such mortgage was a valid and subsisting lien for the reason McAuliff died the 7th day of December, 1911, and at the time of his death he was in possession of the said goods and chattels; that he was insolvent and that said mortgage was not placed on record until two days after the death of said George McAuliff and that possession was taken of the goods by Perry King on December 16th. That the J. Recki Manufacturing Company has a just

claim against George McAuliff for $920.55; that the Oil Well Supply Company has a claim for $667.88 and that this credit would not have been given if they had known of the said chattel mortgage; that property statements were made by said McAuliff to each of said creditors and no mention was made of this chattel mortgage and that such credit was extended after June 16, 1911; that said McAuliff had the said property in his possession up to the time of his death. The case was heard in the Circuit Court upon the following stipulation of facts, to-wit:

"George McAuliff did on the 16th day of June A. D. 1911, make and execute to Perry King a note for one thousand dollars due in six months from date. Said note was secured by a chattel mortgage dated June 16th A. D. 1911, duly executed by George McAuliff and acknowledged before John A. Keller the Justice of the Peace of the Township of Lawrence, State of Illinois, for value received. Said mortgage was on two complete drilling outfits used in drilling oil and gas wells and all their equipments, located in the County of Lawrence, State of Illinois, a copy of which is attached to the answer of Perry King herein or originals produced in court;

We further state that George McAuliff departed his life intestate on the 7th day of December A. D. 1911, in the County of Lawrence, State of Illinois, and that on the 9th day of December, 1911, Perry King filed for record the above named mortgage which is recorded in Book L, page 50, and that Perry King on the 16th day of December A. D. 1911, took possession of the property mentioned in the mortgage and advertised the same for sale in accordance with the terms of said mortgage.

We further state that Web Kinder was appointed administrator of the estate of George McAuliff, deceased, at the December term of the County Court, Lawrence County, Illinois, A. D. 1911, and that on the 20th day of December A. D. 1911, the said Web Kin-

der, administrator, caused a citation to be issued from the said County Court citing the said Perry King to appear and show cause why he should not deliver up possession of the drilling tools taken under the mortgage executed from George McAuliff to Perry King. That at the time of the death of the said George McAuliff he was insolvent and had been for one year before his death but such facts were unknown to Perry King at the time of the execution of said mortgage or at the death of McAuliff or at the time of the taking possession of said property and advertisement of said sale of said chattels of George McAuliff. That he left a number of unsecured general creditors without any lien, attachments or judgments against the above described property at the time of his death, among which were the Oil Well Supply Company in the amount of $653.66; J. Recki Manufacturing Co., $931.16; Ajax Iron Works, $253.14, as well as others. The total amount of his indebtedness at the time of his death was $3,026.61, exclusive of the one thousand dollars due Perry King, which had been allowed by the County Court of Lawrence county, Illinois, February Term 1912. That the aforesaid creditors had no knowledge of or notice of the chattel mortgage of Perry King until it was recorded on December 9, 1911, after the death of George McAuliff, and have no security or means to secure payment except from the estate of George McAuliff. That the total assets of the estate of George McAuliff is much less than the total indebtedness of $3,026.61, as shown by the records of the Probate Court of Lawrence County, Illinois.'' It was afterwards stipulated by the parties that the aforesaid property should be sold and the proceeds deposited in the First National Bank at Bridgeport to await the final determination of this suit, and that the money should then be turned over to the party in favor of whom the suit was determined.

There were several errors assigned by appellant but

the only question involved in them is, did the Circuit Court err in refusing to require Perry King to deliver the property in question to the administrator, and this is the sole question for determination upon this appeal.

It is contended by counsel for appellant that the administrator as representative of the creditors of an insolvent estate occupies the same position as the creditors in respect to a mortgage, void because not recorded, and that as this mortgage was not recorded prior to the death of McAuliff no specific lien could be obtained by King by the recording of the same after the death of the mortgagor; that the administrator stands as trustee for the creditors and as such trustee it is his duty to take possession of all of the property of which the mortgagor died seized. In support of this doctrine he has referred us to several authorities which appear to sustain the contention of counsel; notably among the cases referred to is that of *Blackman v. Baxter, Reed & Co.,* 125 Iowa 118, which holds that "after the demise neither the recording of an incumbrance nor the taking possession of the property can confer a preference. All rights are of necessity to be adjudicated as on the day of the decedent's death, and, as in an insolvent estate, the administrator takes the property for the benefit of the creditors, their interest in the assets relates back to his death and right of possession." This is the view taken by the courts of many states upon this question and if this view of the law should be held to control in this matter then the position taken by counsel for appellant, as to the right of petitioner to obtain possession of this property, would prevail. Many of the states, including Illinois, hold, that while it is true the administrator takes possession of the property for the benefit of the creditors and the representatives of the deceased, yet he only takes such rights in the property as the deceased owned at the time of his death. Woerner in his work upon the law of administration says, that in many

other states, and among them Illinois, the administrator is not permitted to assail or impeach the acts of his intestate.   Woerner's American Law of Administration, sec. 296.   In Choteau v. Jones, 11 Ill. 319, it is said:  "An administrator is not the agent or trustee of creditors, for the purpose of avoiding a fraudulent conveyance.   He is the representative of the intestate, and succeeds to his rights and interests.   He stands in his place, and is bound by his acts.   Whatever was binding on the intestate is binding on his administrator.   He is clothed with no greater power than the intestate possessed."   It is said by Justice Dibell, a learned jurist of the second district, in *Dearth v. Bute,* 71 Ill. App. 494:  "We understand it to be the settled law of this state that an administrator takes the estate as he finds it, *cum onere;* that he stands in the shoes of the deceased, and that whatever would bind the property in the hands of the deceased binds it in the hands of the administrator.   Some states have statutes authorizing the administrator to attack the acts of the decedent as fraudulent.   In other states the courts hold the administrator represents the creditors and may assert their rights, and so may assail a transaction for fraud of his decedent.   But in many other states, and among them Illinois, the administrator is not permitted to assail or impeach the acts of his intestate."   It has been said by the Supreme Court of this state in discussing who are meant by "third parties" as that term is used in the statute.   "Can it mean any other than creditors and subsequent incumbrancers?   We understand the law to be, that a chattel mortgage is only void as to third persons if possession is not taken on the maturity of the note it was given to secure, but we have never understood that a widow, heir, or administrator of a mortgagor, was said 'third person.'   They stand in the shoes of the deceased, and are his representatives, and concluded by all lawful acts and contracts he may have

entered into or performed." *Sumner v. McKee,* 89 Ill. 132.

We are of the opinion that under the laws of the state of Illinois the administrator has no greater rights in the property than his intestate had. He is bound by the acts of the intestate and takes it subject to the liens which the intestate had created and which were binding upon him.

The next question that arises is, was this mortgage valid between Perry King and the deceased though not recorded? We think it is a well settled doctrine of this state that as between the parties thereto a mortgage is valid and binding though not recorded. *Barchard v. Kohn,* 157 Ill. 579; *Martin v. Sexton,* 112 Ill. App. 199.

The mortgage was valid as between King and the deceased and being so the right that the administrator acquired in and to this property was taken with the burdens that the deceased had placed upon the property, and the administrator acquired the exact interest, no greater or no less, than was owned by the deceased at the time of his death, and while it may be a hardship to the other creditors, yet this seems to be the settled law of this state and we are of the opinion that the Circuit Court did not err in its determination of this question and the judgment of the Circuit Court is affirmed.

*Affirmed.*