# WASATCH LIVESTOCK LOAN CO. v. NIELSON et al.

No. 5614.   Decided April 7, 1936.   (56 P. [2d] 613.)

308

*Thomas & Thomas,* of Salt Lake City, for appellant Wasatch Livestock Loan Co.

*Larson & Larson,* of Manti, for appellant Hilma N. Becker.

*Christenson, Straw & Christenson, of Provo,* and *J. A. Hougaard* and *E. A. Britsch,* both of Manti, for respondent.

ELIAS HANSEN, Chief Justice.

This appeal is prosecuted by the Wasatch Livestock Loan Company, hereinafter referred to as the loan company, from a judgment in which the court below adjudged and decreed that a mortgage held by it is inferior to claims of general creditors of William L. Madsen, deceased. The mortgage held by the loan company was executed by William L. Madsen and his wife. It covers a band of sheep. Claims of creditors were, at the time the loan company brought suit to foreclose its mortgage, approved by S. M. Nielson, administrator of the estate of William L. Madsen, deceased, and by the judge of the probate court where the Madsen estate was being probated. The mortgage which the loan company brought suit to foreclose had not

been renewed as required by law. Defendant Nielson, as administrator of the Madsen estate, resisted the foreclosure of the mortgage because of the failure of the loan company to file a renewal affidavit within the time fixed by law.

Hilma N. Becker, in her individual capacity, and as administratrix of the estate of Mary J. Phillips, deceased, also appeals. She complains of the judgment because the court below failed to sustain her claim that she individually and as administratrix of the estate of Mary J. Phillips, deceased, is the owner, free from any and all liens of the parties to this litigation, and entitled to the immediate possession of some of the sheep which the loan company claims are covered by its mortgage. There is no dispute in the evidence touching the controversy between the loan company and defendant S. M. Nielson, administrator. These parties divide solely upon questions of law. The facts which bear upon their rights are as follows: On June 1, 1928, William L. Madsen and his wife executed a note in favor of the Wasatch Livestock Loan Company for the principal sum of $15,000. The note was payable one year after date. As security for the payment of the note, Madsen and wife on the same date as the note was executed, also executed a mortgage on 2,565 head of Rambouillet ewes. The mortgage was acknowledged and verified as required by law. It was filed for record on July 3, 1928, in the office of the county recorder of San Pete county, Utah, which is the county where the mortgagors resided at the time it was executed and continued to so reside until the death of William L. Madsen. The mortgage so executed and filed contains a provision that it is given as security for the payment of the $15,000 note of even date therewith, and also to secure any and all additional loans and advances which the mortgagee might thereafter make to the mortgagors in connection with the care of the sheep covered by the mortgage, together with any and all renewals or extensions of such note or notes or advances. William L. Madsen died

on January 27, 1931. On or about February 21 following, defendant S. M. Nielson was appointed and became administrator of the Madsen estate. The loan company brought suit to foreclose its mortgage by filing its complaint on August 29, 1931. At no time prior to October 4, 1931, did the loan company have possession of the sheep covered by its mortgage. Madsen retained possession of the sheep until his death. After becoming administrator, defendant S. M. Nielson took possession of the sheep and retained such possession until October 4, 1931. On or about May 13, 1931, the loan company advanced to defendant S. M. Nielson, as administrator, the sum of $500. Nielson executed and delivered to the loan company a note payable June 1, 1931, as evidence of the loan. The note recited that it was secured by the mortgage theretofore given by Madsen and his wife to the loan company. On August 18, 1931, a further loan of $200 was made by the loan company to S. M. Nielson, as administrator. The money so loaned to S. M. Nielson was used to pay the expenses of the care and keep of the sheep involved in this controversy.

Pursuant to a stipulation entered into between the parties to this litigation, and on October 4, 1931, the sheep in controversy were delivered to the loan company. Thereafter and on November 6, 1931, pursuant to a further stipulation between the parties herein the sheep were, by order of court, sold for $13,676 in cash, which cash was delivered to the loan company to be retained by it pending the termination of this litigation. There is owing on the loan company's note the sum of $13,805.50 with interest thereon at 7½ per cent. per annum from and after December 1, 1930. The stipulation entered into between the parties contains a provision that the relative rights of the parties in and to the sheep, and the proceeds derived from the sale thereof, shall not be affected by such stipulation or by the sale of the sheep pursuant thereto. After Mr. Nielson became administrator of the Madsen estate, he caused notice to creditors to be published as required by law. The

time for presenting claims against the Madsen estate expired July 18, 1931. The loan company did not present any claim against the estate. On August 27, 1931, the loan company filed for recordation in the office of the county recorder of San Pete county, Utah, an affidavit exhibiting its interest as mortgagee in and to the sheep covered by the mortgage. The affidavit was recorded in a book of mortgages in the office of the county recorder of San Pete county, Utah. Neither the renewal affidavit nor a copy thereof was attached to the original mortgage which the loan company seeks to foreclose in this suit. Within the time allowed by law, claims of general creditors of William L. Madsen, deceased, were presented to the administrator of his estate in the principal sum of $14,898.63, together with interest, making a total of claims presented and approved for principal and interest in a sum in excess of $15,000. Such claims were approved by defendant S. M. Nielson, administrator, on and prior to August 3, 1931. All of such claims were on August 5, 1931, approved by the judge of the probate court in which the Madsen estate was being probated. Upon being so approved the claims were filed in that proceeding. The inventory and appraisement filed in the Madsen estate shows the total appraised value thereof was $33,619.31. All of the property of the estate excepting some household furniture and farming implements of the approximate value of $1,000 had been mortgaged by Mr. Madsen, the deceased, during his lifetime. Prior to the time of the trial of this cause, the mortgages had been foreclosed and all of the property covered by the mortgages sold under foreclosure proceedings. The amount received from the various foreclosure sales were insufficient to pay the amount of the mortgages. The estate is thus insolvent. Without recourse to the money derived from the sale of the sheep in question, there is not sufficient property of the estate to pay the costs of administration and nothing with which to satisfy approved claims of general creditors.

Without in any way questioning the facts thus recited, appellant loan company contends that its mortgage is superior to the approved claims of the general creditors of William L. Madsen, deceased, and that the money derived from the sale of the sheep should be applied on the payment of its mortgage. Defendant S. M. Nielson, administrator of the Madsen estate, contends that the money derived from the sale of the sheep should be applied to the payment of the costs of administration of the estate and to the payment of the approved claims of the general creditors of the estate. That is, the sole question which divides the loan company and the defendant Nielson, as administrator of the Madsen estate.

Our statutory law affecting chattel mortgages provides:

"Unless the possession of personal property is delivered to and retained by the mortgagee, no mortgage thereof shall be valid as against the rights and interests of any person other than the parties thereto, unless:

"(1) The mortgage, duly witnessed by at least one person, provides that the property may remain in the possession of the mortgagor. * * *

"(3) The mortgage, or a copy thereof certified to be such by a notary public or other officer authorized to take acknowledgments, is filed, but not for recordation, in the office of the recorder of the county where the mortgagor resides, or, in case he is a nonresident of this state, in the office of the recorder of the county or counties where the property may be at the time of the execution of the mortgage." R. S. Utah 1933, 13-0-1.

"Every mortgage so filed shall be void after the expiration of three years after the filing thereof as against creditors of the mortgagor or against subsequent purchasers or mortgagees in good faith, unless within thirty days after the expiration of the term of three years from such filing and within thirty days after the expiration of each year thereafter, the mortgagee, his agent or attorney shall make an affidavit exhibiting the interest of the mortgagee in the property at the time last aforesaid claimed by virtue of such mortgage and, if such mortgage is to secure the payment of money, the amount yet due and unpaid, and shall file the same with the county recorder to be attached to the instrument or copy on file to which it relates. If such affidavit is made and filed before any purchase of such mortgaged property shall be made or other mortgage filed or lien obtained

thereon in good faith, it shall be as valid to continue in effect such mortgage as if the same had been made and filed within the period above provided; but no mortgage of personal property shall be valid as against creditors of the mortgagor or subsequent purchasers or mortgagees in good faith after the expiration of five years from the date of the original filing." R. S. Utah 1933. 13-0-2.

It will be observed that under the provisions of the law just quoted the mortgage here brought in question having been filed for record on July 3, 1928, remained in good standing as to every one for a period of three years and thirty days. Such period expired at midnight of August 2, 1931, but as August 2d of that year fell on a Sunday the loan company had all of the following day; that is, August 3d, in which to file its affidavit. It will also be noted that the mortgage was in good standing when the mortgagor William L. Madsen died on January 27, 1931.

This court is committed to the doctrine that general creditors of a mortgagor may by attachment or levy on execution acquire rights in mortgaged property superior to the rights of a mortgagee who has failed to file his mortgage for record or to keep it alive as by statute provided;

"that in the absence of fraud or superior equities on behalf of a creditor the claim of a mortgagee in an unrecorded mortgage, * * * is superior to the right of a general creditor who has not acquired a lien by attachment or otherwise prior to the recording of such mortgage. * * *"

Any creditor whether antecedent or subsequent to the mortgage may attack the same because not filed or refiled as required by law. *Hansen* v. *Daniels*, 73 Utah 142, 272 P. 941; *Commercial Security Bank of Ogden* v. *Chimes Press* 88 Utah 148, 42 P. (2d) 990. So, also, is it the settled law generally that the failure to record or file a mortgage or to file an affidavit of renewal does not affect the rights of the parties thereto. Such, it will be observed, is the purport of the statute heretofore quoted in this opinion. That the foregoing principles of law are established in this jurisdiction is conceded by the parties to this litigation.

It is urged on behalf of the loan company (1) that general creditors of an insolvent estate, even though their claims have been approved by the administrator and by the probate court, have no such lien or claim to mortgaged property of the estate as entitle them to attack a mortgage on the property of the estate merely because a renewal affidavit has not been filed as required by law, especially where the mortgage was in good standing for all purposes at the time of the death of the mortgagor; (2) that the administrator of an estate may not, for the benefit of the general creditors thereof, be heard to question the validity of a mortgage on the property of the estate upon the ground that the mortgagor failed to file a renewal affidavit. Defendant Nielson, administrator of the estate, contends to the contrary. The authorities are in conflict upon the questions which thus divide the parties. . As bearing upon that question, the learned author of 1 Jones Chattel Mortgages and Conditional Sales (Bowers Ed.) § 240, pp. 388, 389, has this to say:

"But where the estate of the deceased mortgagor is insolvent it is held in some cases that his unfiled or unrecorded mortgage is void as against his personal representative into whose hands the possession of the property passes directly from the deceased mortgagor.

"These decisions proceed upon the ground that when the estate of the mortgagor is insolvent, his executor or administrator virtually represents the creditors, so that the unrecorded mortgage then comes in contest with the creditors. It is contended that the mortgage is inoperative and void as to creditors for want of filing, and that the property covered by it drops into and becomes general assets, to be administered for their benefit. Against this view it seems a sufficient answer that a general creditor can not question the validity of an unfiled mortgage until he has obtained a lien upon it by attachment or execution. Until he has seized the property by some process of law, the unfiled mortgage upon it is equally as valid against the mortgagor's creditor as it is against the mortgagor himself. The mortgagor's death gives no specific lien upon his property in favor of a general creditor. The property passes to the personal representative as the mortgagor left it. One who was a mere general creditor before the death remains such after it. His position with respect to other creditors remains unchanged. He and they have the same right,

through the intervention of an administrator, to subject to the payment of their debts, if necessary, all the property of their debtor which has passed to his heirs, devisees, or legatees. This right, which constitutes the only lien which a general creditor has upon the estate of his deceased debtor, is acquired by no act of diligence on the part of the creditor; it arises from no act of the debtor, but from the laws that make the property he has at the time of his death subject to the payment of his debts. This right of the general creditor is limited to the property that passes; and it is limited also to the property in the condition in which it passes, subject to the encumbrances and liens placed upon it by the debtor."

The law applicable to the matter in hand is thus stated in 5 R. C. L. § 43, pp. 414, 415:

"A defect in the record of a mortgage or a failure to record it cannot be attacked by a mere general creditor who has not some right to or interest in or lien on the property itself. Before he may contest its validity his debt must be fastened upon the debtor's property covered by the mortgage. The question whether a particular creditor is entitled to attack the validity of a chattel mortgage on the ground of failure to file or renew it is to be distinguished from the question whether he belongs to a class of creditors with respect to whom an unfiled or an unrenewed mortgage is invalid. Whether he belongs to the class is one question; whether he is in a position to derive benefit from belonging to that class is another and entirely different question. The two inquiries are distinct, and each is independent of the other. There are cases, however, which give color to the view that the fixing of a lien on the specific property is not a prerequisite to an attack on the mortgage by a creditor who extended credit to the mortgagor after the execution and before the recording of the mortgage. There can be no doubt that a claim to property covered by an unfiled or unrenewed chattel mortgage may be asserted by a creditor who has acquired a lien thereon by virtue of some legal proceeding, or who is armed with some process authorizing a seizure thereof. The weight of authority supports the view that where the statute provides that the mortgage shall be void as against creditors of the mortgagor this includes antecedent as well as subsequent creditors. So where the statute requires a renewal affidavit or notice to be filed after a certain period a failure to file this notice will render the mortgage void as to creditors who became such before as well as after the default in renewal. The administrator of an insolvent decedent may avoid an unrecorded mortgage given by the decedent, as the representative of the creditors of the estate, to the same extent as might be done

by the creditors. Where the rule obtains that only a creditor with a fixed lien may avoid an unfiled mortgage, it is probable that the administrator has that right only as to creditors whose claims were allowed before the recording of the mortgage. The right to attack a mortgage is also possessed by a receiver or the trustee in bankruptcy or an assignee in insolvency."

The doctrine that an administrator of an estate does not and cannot represent general creditors of an estate for the purpose of attacking a chattel mortgage binding upon the decedent prevails in the following jurisdictions: Illinois; *Griffin* v. *Wertz*, 2 Ill. App. 487; *Kinder* v. *King*, 180 Ill. App. 62. Kansas; *Denny* v. *Faulkner*, 22 Kan. 89; *Kastner's Estate* v. *Norway State Bank*, 113 Kan. 106, 212 P. 687. Indiana; *Mayer* v. *Myers*, 129 Ind. 366, 27 N. E. 740. Probably in Washington; *Spokane Merchants' Association* v. *First National Bank*, 86 Wash. 367, 150 P. 434, L. R. A. 1918A, 323. Wisconsin; *Lowe* v. *Wing*, 56 Wis. 31, 13 N. W. 892; *Ullman* v. *Duncan*, 78 Wis. 213, 47 N. W. 266, 9 L. R. A. 683; *Graham* v. *Perry*, 200 Wis. 211, 228 N. W. 135, 68 A. L. R. 267. None of the foregoing cases with the possible exception of *Ullman* v. *Duncan* are authority for the view that the right "of a general creditor is limited to the property that passes; and it is limited also to the property in the condition in which it passes, subject to the encumbrances and liens placed upon it by the debtor." In the case of *Kastner's Estate* v. *Norway State Bank*, supra, it seems that the Supreme Court of Kansas recognized the right of a general creditor to attack a chattel mortgage notwithstanding it was binding between the parties thereto at the time of the death of the mortgagor. The loan company also claims that its contention finds support in decisions of the Supreme Court of the United States. Among the cases so cited and relied upon are *Stewart* v. *Platt*, 101 U. S. 731, 25 L. Ed. 816; *York Mfg. Co.* v. *Cassell*, 201 U. S. 344, 26 S. Ct. 481, 50 L. Ed. 782; *Thompson* v. *Fairbanks*, 196 U. S. 516, 25 S. Ct. 306, 49 L. Ed. 577. These and other federal cases cited by the loan

company are authority for the doctrine that the validity of a chattel mortgage will be determined according to the law prevailing in the state where the mortgaged property is situated, and that in the absence of fraud in fact or a statute to the contrary an assignee in bankruptcy can assail, on behalf of general creditors, such claims and only such claims to the mortgaged property or the proceeds derived from the sale thereof as the bankrupt mortgagor could himself have assailed. In this connection it may be observed that in some jurisdictions an administrator is not permitted to assail or impeach the acts of his intestate for the purpose of avoiding a fraudulent conveyance. *Kinder* v. *King,* supra. That an administrator of an insolvent estate may, for general creditors of the estate, attack a mortgage void as to creditors but binding as between the deceased mortgagor and his mortgagee, prevails in the following jurisdictions: Ohio; *Kilbourne* v. *Fay,* 29 Ohio St. 264, 23 Am. Rep. 741. Iowa; *Blackman* v. *Baxter Reed & Co.,* 125 Iowa 118, 100 N. W. 75, 70 L. R. A. 250, 2 Ann. Cas. 707. Massachusetts; *Hartford Accident & Indemnity Co.* v. *Callahan,* 271 Mass. 556, 171 N. E. 820. Missouri; *Hemley* v. *Harmon,* 103 Mo. App. 233, 77 S. W. 136. Nebraska; *Folsom* v. *Peru Plow & Implement Co.,* 69 Neb. 316, 95 N. W. 635, 111 Am. St. Rep. 537. Montana; *Leffek* v. *Luedeman,* 95 Mont. 457, 27 P. (2d) 511, 91 A. L. R. 286. New Jersey; *Currie* v. *Knight,* 34 N. J. Eq. 485. Pennsylvania; *Kater* v. *Steinruck's Administrator,* 40 Pa. 501. Wyoming; *First National Bank* v. *Ludvigsen,* 8 Wyo. 230, 56 P. 994, 57 P 934, 80 Am. St. Rep. 928.

The conflict in the adjudicated cases touching the question of whether an administrator may or may not assail a mortgage executed by and binding upon his intestate at the time of his death may, in a measure, be reconciled by differences in statutes of the various jurisdictions, but after making proper allowances for such differences in statutory provisions, still the two lines of authorities are definitely at war with each other. That an ad-

ministrator may not, for the benefit of heirs, attack a mortgage which would have been binding upon his intestate if he were alive is quite generally recognized. The attack is allowable, if at all, only in the event the estate is insolvent because it is only in such case that the interest of the general creditors and the interest of a mortgagee come in conflict. Generally, an administrator of a solvent estate represents the heirs and the creditors, but when the estate is insolvent the heirs in reality have no interest in the estate, and therefore it is held by the cases relied upon by Nielson, administrator, that the administrator ceases to act in a dual capacity and becomes the agent or trustee for the general creditors, and, as such, may, for their benefit, assail an unfiled or unrecorded mortgage. To determine whether or not an administrator is vested with authority to so act for general creditors within this jurisdiction requires an examination of our probate code. R. S. Utah 1933, provides:

102-11-13:

"When there is a deficiency of assets in the hands of an executor or administrator, and the decedent in his lifetime has conveyed any real estate, or any rights or interest therein, with intent to defraud his creditors, or to avoid any right of, or debt or duty to, any person, or has so conveyed such real estate that by law deeds or conveyances are void as against creditors, the executor or administrator must commence and prosecute to final judgment any proper action for the recovery of the same, and may recover for the benefit of the creditors all such real estate so fraudulently conveyed, and may also for the benefit of the creditors sue for and recover all goods, chattels, rights or credits which have been so conveyed by the decedent in his lifetime, whatever may have been the manner of such fraudulent conveyance."

102-11-14:

"No executor or administrator is bound to sue for the benefit of the creditors to recover such estate except on application of creditors who will pay such part of the costs and expenses of the suit, or give such security to the executor or administrator therefor, as the court or judge shall direct."

102-11-15:

"All real estate so recovered must be sold for the payment of debts in the same manner as if the decedent had died seised thereof, upon

"obtaining an order therefor from the court; and the proceeds of all goods, chattels, rights and credits so recovered must be appropriated to the payment of the debts of the decedent in the same manner as other property in the hands of the executor or administrator."

The foregoing provisions of the code were before this court for construction in the case of *Fehringer* v. *Commercial National Bank of Ogden*, 23 Utah 393, 64 P. 1108. It was there held that "creditors of an insolvent estate may not bring an action in their own names to set aside a conveyance made by the decedent in his lifetime, without first having made the demand on the administrator to bring such suit, required by said sections, and having been met with a refusal by him." The quotation is from the syllabus. It reflects the law announced in the opinion. Other provisions of our probate code which bear upon the question in hand are: 101-3-2 wherein it is provided that "when a person dies intestate, all his property, real and personal, without any distinction between them, is chargeable with the payment of his debts, except as otherwise provided by law." By the provisions of 102-9-4, claims must be presented within the time fixed by the code, otherwise they are forever barred. 102-9-16 prohibits the issuance of execution on a judgment rendered against the administrator. Such a judgment, when for the recovery of money, must be presented to the administrator the same as other claims. By 102-11-3 it is made the duty of the administrator to take possession of all the personal property of the estate and collect all debts due the decedent. 102-11-5 permits the administrator to bring and prosecute "actions for the recovery of any property, real or personal, or for the possession thereof, or to quiet title thereto, or to determine any adverse claim thereon, and all actions founded upon contracts, may be maintained by and against executors and administrators in all cases in which the same might have been maintained by or against their respective testators or intestates." 102-9-11 prohibits the bringing of any action on a claim unless it is first presented

to the administrator, except that the holder of a mortgage or lien on the property of an estate may enforce the same when recourse against all other property of the estate is expressly waived in the complaint. By 104-30-13 it is provided that when a party dies after verdict or decision and before judgment, the judgment is not a lien against the property of the estate, but is payable in the course of the administration of the estate. 102-9-22 places claims against estates in five classes and provision is made therein for the order in which they shall be paid.

From the foregoing provisions of the code, it is apparent that a creditor, after the death of his debtor, is precluded from securing a specific lien on the property of the estate by attachment, execution, or other legal process unless it be in the course provided by the probate code; ▬ that is, claims presented and allowed have the same standing whether they be founded upon a judgment or claims allowed and approved by the administrator and the court. In either event the claimant must be content to wait until the administrator of the estate acquires funds with which to pay his claim. ' One of the principal reasons why a general creditor may not question an unrecorded mortgage executed by his debtor until a lien is fastened thereon is that the mortgagor, even though insolvent, is at liberty to dispose of his property as he desires so long as the transaction is bona fide. However, upon the death of the debtor, no one succeeds to his right to sell or otherwise dispose of his estate. Upon his death all of the unencumbered property of the estate is placed in the custody of the law and remains so until disposed of under the direction of the court. When disposed of, the proceeds thereof must be applied to payment of creditors in the order provided by law. Even though a creditor believes that he is entitled to have his claim against an estate satisfied with property claimed by another, such creditor may not bring an action for the recovery thereof until after he has requested the administrator to bring an action therefor and the request

has been refused. *Fehringer* v. *Commercial National Bank of Ogden,* supra. Even if an administrator complies with the request of a creditor and brings an action, and even though at the expense of the creditor the property is recovered, still the creditor acquires no other or greater right to the property recovered than he has in the other property of the insolvent estate.

While the suit in the instant case is not to recover property for the estate, yet the same principles that permit an administrator to recover property for the estate clearly entitled him to defend actions which are brought for the purpose of depriving the administrator of property which has come into his possession as administrator. It will thus be observed that the creditor of an insolvent estate is deprived of all right to fasten a lien upon specific property of the estate by attachment or execution. Because of such fact, we can perceive of no good reason why a right attaching to the property of an estate through probate proceedings should not be entitled to the same protection as a right acquired through other proceedings. Our probate code having denied to creditors the right to levy attachment or execution on the property of an estate, it follows that a chattel mortgage is not vulnerable to attack because not filed or renewed unless the attack may be made by the administrator of the estate as a representative of the creditors. If the chattel mortgage here brought in question is, as a matter of substantive law, to be held void as to general creditors of the Madsen estate, it would seem bordering on the farcical for the lawmaking power to make the further provision that neither the general creditors themselves nor any one for them may be heard to say that it is void. When a right exists, courts are reluctant to deny to the possessor of the right all opportunity to exercise the same because of lack of a remedy. Indeed, if the right exists, the courts on their own initiative not infrequently provide a remedy whereby the right may be made effective. *Baker* v. *Department of Registra-*

*tion,* 78 Utah 424, 3 P. (2d) 1082. It, however, is not necessary to go to that extent in the instant case. The possessor of a right may lose such right because of delay or because he chooses the wrong remedy in an attempt to enforce the same. But to say that one has a right without any remedy for the enforcement thereof is a conclusion at war with itself. Our statutes touching the matter in hand should not be so construed as to reach the conclusion that a general creditor of an insolvent estate has a right to attack a mortgage which has not been filed or renewed, but is without a remedy to enforce such right. What we conceive to be the weight of authority and supported by the better reasoning are opposed to such view.

It is further urged on behalf of the loan company that if it be conceded that the general creditors acquired a lien upon the property of the Madsen estate, then and in such case the lien attached as of the date of his death and the lien so acquired is inferior and subsequent to the mortgage of the loan company because its mortgage was in good standing at the time of Madsen's death. Our attention is directed to the doctrine which prevails generally that a mortgage or other lien on property covered by a prior mortgage in good standing remains inferior and subject to such prior mortgage notwithstanding a renewal affidavit is not filed within time. In support of its contention, reliance is had by the loan company upon the case of *Ullman* v. *Duncan,* supra. That case supports the loan company's position in such respect. The effect of the doctrine of that case is, in so far as general creditors are concerned, to relieve a mortgagee from filing a renewal affidavit in the event his mortgage is in good standing at the time of the death of the mortgagor. A different result is reached in the case of *Folsom* v. *Peru Plow & Implement Company,* supra. In that case it is held that an administrator may attack an unrecorded mortgage only on behalf of creditors whose claims have been approved and allowed against the estate. Under the doctrine of that case, the administrator of the Madsen estate could

have assailed the loan company's mortgage at any time after August 5, 1931, when the claims of general creditors of the estate were approved by the court. On that date more than three years and thirty days had elapsed since the filing of the loan company's mortgage and no renewal affidavit had been filed. Nor was such an affidavit filed when the loan company brought its suit to foreclose its mortgage. A renewal affidavit was recorded two days before his suit was begun, but was not filed as required by law.

We shall not undertake in this opinion a review of the cases cited by the parties. Such a review would but emphasize the fact that the adjudicated cases are in hopeless conflict. Suffice is to say that having reached the conclusion that an administrator of an insolvent estate may represent the general creditors thereof, it would seem to logically follow that he may assail a mortgage when it is vulnerable to attack. In the instant case the loan company's mortgage was vulnerable to attack by general creditors at the time it was brought in question unless it may be said that the death of the mortgagor forestalled an attack. To hold that the attack must relate back to the time of the death of the mortgagor is, in part at least, to deny to the administrator authority to represent the creditors of the estate. If an attack upon the mortgage may not be made by the administrator when it is vulnerable to attack, the doctrine of representation becomes a nullity. If the claims of creditors attach as of the date of the death of a mortgagor, then the relative rights of the mortgagee to property belonging to an insolvent estate, and the rights of general creditors thereof, become fixed as of that date. In such case there is no necessity for the mortgagor to protect his mortgage against creditors. We, however, are unable to find any language in the provisions of our statute here brought in question to admit of the construction that the relative rights of a mortgagee and the creditors of a mortgagor are altered by the death of a mortgagor. As is aptly said in the case of *Kilbourne* v. *Fay*, supra, "the creditors of a mortgagor do not cease to be

such by his death." The language of our statute is to the effect that upon failure of a mortgagee to renew his mortgage it becomes void as to creditors of the mortgagor. To carve out of the statute an exception in case the mortgagor dies while the mortgage is still alive is to give a meaning to language contrary to its clear import. This we may not do. Nor, in the light of the plain language of the statute dealing with chattel mortgages are we impressed with the view that rights "of general creditors are limited to the property that passes, and are limited also to the property in the condition in which it passes subject to the encumbrances and liens placed upon it by the debtor." A doctrine somewhat analogous to that just quoted is that an attaching creditor acquires such right, and only such right, in the property attached as was owned by the debtor when the attachment was made. As a general rule, both doctrines are good law, but when they come in conflict with the provisions of the statute which declares that mortgages not filed, or not kept alive, are void as to creditors of a mortgagor, the general rule must give way to statutory law. If a mortgagee fails to keep his mortgage alive as by the statute provided, he may thereby forfeit his lien in favor of creditors after, as well as before, the death of the mortgagor. In either event, it is a penalty placed upon a mortgagee by the lawmaking power because of failure to keep the mortgage within the protection of the law. We are mindful that the conclusion reached works a hardship upon the loan company and results in a corresponding advantage to general creditors of the estate. The same results follow when a creditor levies upon property covered by an unrecorded mortgage. Such results are not uncommon, where, as here, the successful party has been as diligent in protecting his claim as the law permits, and the losing party has failed to exercise that degree of diligence required by law to maintain its claim immune from timely attack. If the law in such respect is unfair, the evil must be corrected by the Legislature.

The court below did not err in holding that the adminis-

trator of the estate of William L. Madsen was, for the use and benefit of general creditors of that estate, entitled to prevail against the mortgage of the loan company.

The briefs of counsel are directed solely to the question of the standing of the loan company's mortgage, but in view of our conclusion that the mortgage is void as to general creditors of the Madsen estate and that defendant Nielson, as administrator thereof, may assail the mortgage because not kept alive, still it does not follow that the money which the loan company advanced to Nielson, as administrator, after the death of Madsen, may not be regained by the loan company. By its assignments of error the loan company attacks the whole of the judgment, and hence attacks every part thereof. It was alleged by the loan company in its complaint, and admitted by defendant Nielson, as administrator, in his answer, that on May 13, 1931, the loan company, advanced $500, and on August 18, 1931, advanced an additional $200 to Nielson, as administrator of the estate, that such sum was so advanced and used in the care, maintenance, protection, transportation, and marketing of the sheep in controversy. Nielson, as administrator, agreed to repay that money, together with interest thereon at 6 and one-half per cent per annum. The loan company is entitled to reimbursement out of the funds in its possession for the money so advanced, together with interest thereon up to the time the sheep were sold and the money paid to the loan company. Notwithstanding the mortgage is void as to general creditors of the estate, and notwithstanding the loan company did not present its claim to the administrator, still it is not foreclosed from recovery of the money advanced after the death of Madsen for the care of the sheep.

It is the duty of an administrator to take possession and preserve the property of the estate. He may retain in his hands the necessary expenses of administration. R. S. Utah 1933, 102-9-21. The statutory provisions requiring that claims be presented to the administrator are limited to claims against the decedent. They do not apply to obligations in-

curred by the administrator. 24 C. J. 310; 3 Bancroft Probate Practice, § 783, p. 1394; *Martin* v. *Saxton,* 48 Utah 488, 160 P. 441; *Dunn* v. *Wallingford,* 47 Utah 491, 155 P. 347; In re *Hansen's Estate,* 55 Utah 23, 184 P. 197; *Miller* v. *Monroe,* 50 Idaho 726, 300 P. 362. While the administrator was without authority to mortgage the sheep in the absence of an order of court granting such authority, still the obligation of the estate to pay the money used to protect its property remained notwithstanding the mortgage fails.

Nor is there any support in this record for that part of the judgment which requires the loan company to pay interest at the rate of 8 per cent per annum on the money secured from the sale of the sheep from and after the date it received the same. The stipulation entered into between the parties permitting the loan company to retain the money is silent as to interest. When money is deposited in court pending the outcome of litigation as to who is entitled thereto, neither party claiming the money is entitled to interest thereon. The estate is in no worse position than it would have been in had the money been deposited in court. In the absence of the stipulation, doubtless it would have been so deposited. The parties having stipulated, the loan company should retain the money, without any mention of interest, the court below was in error in requiring the loan company to pay interest on the money retained by it. *Evancovich* v. *Schiller,* 83 Utah 1, 26 P. (2d) 830.

The controversy between the defendant Nielson, as administrator of the estate, and Hilma N. Becker, individually, and as executrix of the estate of Mary J. Phillips, deceased, grows out of two written contracts of lease whereby Hilma N. Becker and Mary J. Phillips each leased sheep to William L. Madsen. Each of the leases is dated October 1, 1927, and cover 583 and 300 head of sheep respectively. Each lease provides that Mr. Madsen shall pay to the lessor "an amount of wool equal to two (2) pounds for each sheep hereby leased and to give and deliver to the (lessor) * * * eight (8) lambs for each hundred head of

sheep hereby leased." Each lease also provides that "the term of this lease shall be for three (3) years from and after the date hereof, provided that the (lessor) * * * may terminate this lease and agreement and receive her sheep at the end of any lease year by giving (lessor) * * * 30 days notice of her intention to do so." There is considerable evidence in the record touching questions of whether or not the leased sheep were among those covered by the mortgage involved in this controversy, and also as to whether or not the loan company had notice that the sheep did not belong to Madsen at the time it took its mortgage. Upon both of those issues the court below found in favor of the loan company. Hilma N. Becker, individually, and as administratrix, by various assignments of error attacks those findings. In the main the brief of Mrs. Becker is devoted to a discussion of the law and the evidence affecting the controversy between the loan company and Mrs. Becker. Touching her claim against the Madsen estate, she adopts the argument and briefs of the loan company. In view of the conclusion that the loan company is not entitled to prevail on its chattel mortgage, there is no occasion to discuss the controversy between the loan company and Mrs. Becker. The loan company having received nothing by reason of its chattel mortgage, Mrs. Becker can receive nothing notwithstanding her rights in and to some of the sheep in controversy may be superior to the rights of the loan company. Before Mrs. Becker is entitled to any of the money derived from the sale of the sheep, it must be made to appear that her rights are either equal or superior to those of the defendant administrator of the Madsen estate. She has failed to establish such right. The leases upon which she relied were not recorded as required by Comp. Laws Utah 1917, § 130, as amended by Laws of Utah 1921, c. 3, now R. S. Utah 1933, 33-3-1. At the time the leases were entered into, the law provided that all leases of sheep in excess of 500 head must be recorded in the county where the lessee resides, otherwise the interest of the lessor should be subsequent and subordi-

nate to the claims of creditors of the lessee. By the amendment of 1921, the law was made applicable to all sheep leased in excess of 100 head, and it has remained at the latter number since the amendment of 1921. No claim was presented to the administrator of the estate of William L. Madsen for the sheep covered by the leases. Nor is any contention made that any of the creditors of William L. Madsen knew that either Mrs. Phillips or Mrs. Becker owned any sheep in Mr. Madsen's herd at the time credit was extended to Mr. Madsen, or at all. In the main, what has been said with respect to the relative rights of defendant Nielson, as administrator of the Madsen estate, and the loan company is applicable to the claim asserted by Mrs. Becker individually and as administratrix of the estate of Mrs. Phillips. Both of such claims are inferior to the claims of general creditors, and, as there are insufficient funds with which to pay the approved claims of creditors, neither Mrs. Becker, individually, or in her representative capacity, is entitled to any of the money derived from the sale of the sheep.

The Mt. Pleasant Commercial & Savings Bank, a corporation, and W. H. Hadlock, bank commissioner of Utah in charge of that bank, were made parties to the foreclosure suit in the court below. It was there claimed that the bank held a mortgage on the sheep in question. Nothing was awarded by the trial court to the bank on its claim. It has not appealed from the judgment. Therefore, as to the bank, there is nothing to review.

This cause is remanded to the district court of Salt Lake county with directions to amend its findings of fact, conclusions of law, and judgment to conform to the views herein expressed. As so amended, the judgment is affirmed. Both the loan company and defendant Nielson, as administrator, having prevailed in part, and as the additional cost imposed upon them by the appeals of Mrs. Becker, individually, and as administratrix, is negligible, no costs will be allowed either party on this appeal.

FOLLAND, EPHRAIM HANSON, and MOFFAT, JJ., and CHRISTENSEN, District Judge, concur.

WOLFE, J., being disqualified, did not participate herein.